GEORGE S. PARKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5602. Promulgated February 17, 1928.

*Otto A. Oestreich, Esq., P. J. E. Wood, Esq.,* and *Hiram M. Now-lan, Esq.,* for the petitioner.
*W. F. Wattles, Esq.,* for the respondent.

OPINION.

PHILLIPS: Section 202(b) of the Revenue Act of 1918 provides:

When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any.

The sole question presented for determination is the fair market value, if any, of the preferred stock, second issue, of The Parker Pen Co., at the time it was issued to the petitioner in July, 1920. The Commissioner determined the value to be $100 per share. The petitioner claims that such stock had no fair market value.

This stock was issued to the petitioner in connection with the reorganization of The Parker Pen Co. At the same time $250,000 par value of the preferred stock, first issue, of The Parker Pen Co. was sold to brokers at $89 per share and was subsequently sold by them, after much difficulty, to the public at par. In order to make the preferred stock, first issue, as attractive as possible it was surrounded by numerous safeguards, many of which served to de-

crease the attractiveness of the preferred stock, second issue, as an investment. Both issues provided for the payment of dividends at 8 per cent, which were cumulative. It seems self-evident that if the company could sell its preferred stock, first issue, for only $89 per share, the junior issue was not worth par, as determined by the Commissioner.

There is in the record evidence of the book value of the assets of the company and some evidence of the intrinsic value of some of these assets. There is also evidence as to earnings of prior years. All of this evidence indicates that under normal circumstances the stock received by the petitioner had a substantial intrinsic value. In July, 1920, however, conditions were far from normal so far as they related to the marketability of stock issues. The best of investment stocks were selling far below what would have been their value in normal times. There was little, if any, market for junior issues of preferred stocks, such as that received by the petitioner, which did not participate generally in the profits of the business. We are satisfied that under the conditions that prevailed at the time the petitioner received his stock it could not have been marketed for more than a nominal amount and that because of such unusual conditions its fair market value can not be said to be measurable by either its intrinsic value under normal conditions or by earnings of past years.

We do not agree with the opinion expressed by some of the witnesses called by petitioner that where there are no sales there can be no fair market value. Here, however, it appears that there was no market, either in existence or which could have been readily created, for such a stock as that received by the petitioner and we are of the opinion that in such circumstances it has no fair market value.

> *Decision will be entered for petitioner, under Rule 50.*