EDWIN W. EISENDRATH, ROSE L. EISENDRATH AND EMANUEL LOWENSTEIN, THE DULY APPOINTED AND QUALIFIED EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF WILLIAM N. EISENDRATH, DECEASED, PETITIONERS, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36724–36729. Promulgated July 26, 1933.

---

[1] William B. Eisendrath; Edwin W. Eisendrath; Marion Eisendrath; Rose L. Eisendrath and Edwin W. Eisendrath, Trustees for William N. Eisendrath, Jr., and William N. Eisendrath, Jr.; and Isaac M. Bernstein.

*Harry Thom, Esq.*, and *Freeman Day, Esq.*, for the petitioners.
*J. Arthur Adams, Esq.*, for the respondent.

750

**754**

OPINION.

McMahon: We must first dispose of the motion of counsel for the petitioners to dismiss the petition in Docket No. 36724. It is the contention of the petitioners that since the taxpayer, William N. Eisendrath, was dead at the time the deficiency notice was mailed, the notice was sent to a nonexistent person and that the "taxpayer" erroneously named in the deficiency letter did not file the petition with the Board. Petitioners therefore contend that the Board does not have jurisdiction because section 274 (a) of the Revenue Act of 1926 was not complied with. There are set forth in the margin the applicable provisions of the Revenue Act of 1926.[1]

---

[1] Sec. 200. When used in this title—

\*  \*  \*  \*  \*  \*  \*

(b) The term "fiduciary" means a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person.

Sec. 274. (a) If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day), the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. \*  \*  \*

Sec. 281. (a) Upon notice to the Commissioner that any person is acting in a fiduciary capacity such fiduciary shall assume the powers, rights, duties, and privileges of the taxpayer in respect of a tax imposed by this title or by prior income, excess-profits, or war profits tax Act (except as otherwise specifically provided and except that the tax shall be collected from the estate of the taxpayer), until notice is given that the fiduciary capacity has terminated.

(b) Upon notice to the Commissioner that any person is acting in a fiduciary capacity for a person subject to the liability specified in section 280, the fiduciary shall assume, on behalf of such person, the powers, rights, duties, and privileges of such person under such section (except that the liability shall be collected from the estate of such person), until notice is given that the fiduciary capacity has terminated.

(c) Notice under subdivision (a) or (b) shall be given in accordance with regulations prescribed by the Commissioner with the approval of the Secretary.

(d) In the absence of any notice to the Commissioner under subdivision (a) or (b), notice under this title of a deficiency or other liability, if mailed to the taxpayer or other person subject to liability at his last known address, shall be sufficient for the purposes of this title even if such taxpayer or other person is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

In so far as we are advised, the respondent, prior to the time he mailed the notice of deficiency, which is the basis for the petition in this proceeding, had received no notice as provided in section 281 of the Revenue Act of 1926. The only notice of which we have any proof, was filed with respondent after the mailing of the deficiency notice. Therefore under subdivision (d) of section 281 the deficiency notice which he mailed to the deceased taxpayer was sufficient for the purposes of section 274 (a).

We also consider that the executors of the deceased taxpayer were authorized under section 274 (a), *supra*, to file the petition with the Board, since they stand in the place of the deceased taxpayer.

In *Butler* v. *Eaton*, 141 U. S. 240, the Supreme Court referred to a decision of the Supreme Court of Massachusetts. The Supreme Court of Massachusetts had decided that for the purpose of *res judicata* the parties were the same in an action by Mary J. Eaton against the Pacific National Bank and an action between the receiver of the bank and Mary J. Eaton. The Supreme Court stated in regard to this holding:

\* \* \* We are inclined to think, however, that the court below was right in determining that the two actions were substantially between the same parties, inasmuch as a receiver of a national bank, in all actions and suits growing out of the transactions of the bank, represents it *as fully as an executor represents his testator.* \* \* \* [Italics supplied.]

In *Gertrude H. Miles, Executrix*, 12 B.T.A. 519, we stated in part:

\* \* \* There is nothing in the record which indicates that respondent proceeded under section 280. We have not been favored by a brief from counsel for petitioner but are under the impression that he relies on *Owensboro Ditcher & Grader Co.* v. *Lucas*, 18 Fed. (2d) 798. Without passing on the merits of that decision, it is sufficient to point out that it is apparent that petitioner is not a transferee, such as was involved, in that case. *She is the personal representative of the deceased taxpayer and as such she stands in his shoes. She represents him in the settlement of his estate; in the collection of all that is due it and in the payment of all his obligations.* As such, it was her duty not only to return the income of the estate but also all the income of her testator which he had not returned. Section 225 of the Revenue Acts of 1918, 1919, 1921, 1924 and 1926. Cf. *Bankers' Trust Co.* v. *Bowers*, 295 Fed. 89. She has the right to file in behalf of the estate waivers extending the period of limitation. *Aldridge* v. *United States*, 64 Ct. Cls. 424. *She has the right to recover any overpayments of decedent's taxes and she is under obligation to pay all his taxes which remain unpaid.* In fact, she is what the term "personal representative" imports—the representative of her deceased husband in all matters that pertain to his liabilities and to his estate. She is his *iadem persona. Matter of Martin*, 144 N. Y. S. 174. Not only is she the representative of decedent, but she is also the representative of those who have claims against his estate, including the Government. 23 C.J. 1170. [Italics supplied.]

See also *Charles M. Howell, Administrator*, 21 B.T.A. 757.

Since the parties who filed the petition herein on behalf of the estate of William N. Eisendrath were the duly appointed executors

of such estate, we conclude that we have jurisdiction of the proceeding brought by them. See Rule 6 of the present rules of practice before this Board which provides:

The proceeding shall be brought by and in the name of the person against whom the deficiency [or liability, as the case may be], is asserted by the Commissioner, or a fiduciary legally entitled to institute a proceeding on behalf of such person. (Sec. 281, Revenue Act of 1926). * * *

The case of *William A. Matern*, 21 B.T.A. 384, cited by petitioners, is not in point. There neither of the parties who filed the petition with the Board was the legal representative of the decedent or his estate.

The motion of counsel for petitioners to dismiss the proceeding in Docket No. 36724 for lack of jurisdiction is hereby denied.

The petitioners having waived other issues raised in the pleadings, the only question left for decision is whether gain was derived by the stockholders of the Illinois Co. upon the reorganization of that company whereby they received, for every share of stock of the Illinois Co. which they owned, 50 shares of the stock of the Delaware Co. plus $1,400 in cash.

There are set forth in the margin applicable provisions of the Revenue Act of 1921, as amended by the Act of Congress of March 4, 1923.[2]

The stockholders of the Illinois Co. received, in addition to the stock of the Delaware Co., no " other property " upon the reorganization than money. In the instant proceeding under section 202(c) of the Revenue Act of 1921 the gain is to be computed in accordance with subdivisions (a) and (b) of section 202 (that is, by taking into consideration the total amount realized in the disposition of the stock of the Illinois Co. including the readily realizable market value, if

[2] Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—

* * * * * * *

(b) The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a) ; but—

(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, *the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market value or price;* [Italics supplied.]

* . * * * * * *

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

* * * * * * *

(2) When in the reorganization of one or more corporations a person receives in place of any stock or securities owned by him, stock or securities in a corporation a party to

any, of the stock of the Delaware Co.), but the gain to be recognized for tax purposes is not in any event to be greater than the amount of money received by the petitioners from the Delaware Co.

It has been stipulated that the basis for the determination of gain or loss upon the disposition of the stock of the Illinois Co. is the March 1, 1913, value thereof, which value was $1,410.03 per share. The respondent apparently determined that the stock of the Delaware Co. received by the stockholders of the Illinois Co. had a value at least equal to the March 1, 1913, value of the stock of the Illinois Co. since he has held that the full amount of the cash received by each stockholder constituted taxable gain. Petitioners contend that the stock of the Delaware Co. at the time it was received by them had no readily realizable market value and that since the amount of cash received did not exceed the March 1, 1913, value of the stock of the Illinois Co. no taxable gain was derived upon the reorganization.

At the outset it is interesting to examine the intent of the Congress in enacting the provisions of the Revenue Act of 1921 relating to the recognition of gain or loss upon the exchange of property. In the report of the Ways and Means Committee on the Revenue Bill of 1921 there is contained the following:

#### EXCHANGES OF PROPERTY FOR OTHER PROPERTY

The bill (subdivision (d), p. 6) provides new and explicit rules for determining gain or loss where property is exchanged for other property. Under existing law " when property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any * * *." Probably no part of the present income-tax law has been productive of so much uncertainty and litigation or has more seriously interfered with those business readjustments which are peculiarly necessary under existing conditions. Under existing law the presumption is in favor of taxation. *The proposed bill modifies that presumption by providing that on an exchange of property for property no gain or loss shall be recognized unless the property received in exchange has a*

or resulting from such reorganization. The word "reorganization," as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation), recapitalization, or mere change in identity, form or place of organization of a corporation, (however effected) ; * * *

(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2) and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the amount of the gain resulting from such exchange shall be computed in accordance with subdivisions (a) and (b) of this section, but in no such case shall the taxable gain exceed the amount of the money and the fair market value of such other property received in exchange.

*definite and readily realizable market value;* and specifies in addition certain classes of exchanges on which no gain or loss is recognized even if the property received in exchange has a readily realizable market value. [Italics supplied.]

The Finance Committee Report upon the same bill contains similar language.

We shall first determine what is meant by the term "readily realizable market value."

The word "readily" is defined in Webster's New International Dictionary, 1929, as "In a ready, or prompt manner; quickly, easily."

Article 1564 of Regulations 62, relating to the Revenue Act of 1921, provides in part as follows:

\* \* \* Property has a readily realizable market value if it can be readily converted into an amount of cash or its equivalent substantially equal to the fair value of the property. In other words, the property received in exchange must be readily marketable at substantially its fair value in order that a gain or loss be recognized. \* \* \*

In *Anton M. Meyer*, 3 B.T.A. 1329, we quoted with approval the portion of the regulations above set forth and held that certain personal notes given by a member of a partnership did not have a readily realizable market value.

That provision of the regulations was also approved in *Biscayne Trust Co., Executor*, 18 B.T.A. 1015, and in *Clarke* v. *Welch*, 46 Fed. (2d) 563. In the latter case certain stock was held not to have a readily realizable market value. The court there stated in part:

\* \* \* There is no question as to the intendment of the statute, or regulations pertaining thereto, which, I conceive, contemplates that *property, real, personal, or mixed, shall not be subject to income taxes unless on transfer the property received in exchange has a readily realizable market value; and it is invested with such value if it can be readily converted in an amount of cash or its equivalent substantially equal to its fair value (see article 1564, Reg. 62);* and it is stated that whether property has a readily realizable market value depends upon the facts and circumstances in each particular case.

Tested by this rule, I am constrained to hold that there was no evidence that the oil stock could have been readily sold in the market at approximately its par value. No sales were made of the 250 shares allotted to husband and wife, respectively, and consequently there were no gains or profits. Indeed, at such time the enterprise was involved in uncertainty as to the outcome. *It cannot in fairness be regarded as income, in my opinion, until a market value is established or unless it appears that a certain amount of gain is realizable therefrom.* \* \* \*

\* \* \* The evidence before me, as I see it, outweighs the prima facie showing of the United States, and the conclusion is not, I think, unwarranted that it preponderatingly appears that the shares of stock received by Mrs. Clarke and her husband did not have a realizable market value, and that no tax is assessable thereon until there is a transfer, exchange, or sale upon a basis of fair market value. [Italics supplied.]

\* \* \* \* \* \* \*

In *Alexander D. Falck*, 26 B.T.A. 1359, we stated in part:

\* \* \* The term "readily realizable market value" has been used in the revenue acts where the recipient of property in an exchange is to be taxed on the gain resulting from the exchange. Before such a transaction is considered to give rise to taxable gain under the statute, the property received in the exchange must have a readily realizable market value, i. e., *be practically the equivalent of cash.* \* \* \* [Italics supplied.]

To the same effect are *Smith* v. *Dean*, 52 Fed. (2d) 291, and *A. O'Day*, 20 B.T.A. 455.

In the instant proceeding the evidence shows that at the time the stock of the Delaware Co. was issued to the stockholders of the Illinois Co., and theretofore, the independent leather companies, such as the Delaware Co., had been subjected to severe competition by the shoe manufacturers and by the packers, who had also gone into the manufacture of leather; that during the war the leather companies had overexpanded and as a consequence in 1923 there was an oversupply of leather-tanning facilities; that many of the larger leather companies had in 1923 and years just previous thereto suffered tremendous losses; that in September 1923, the stocks of leather companies were in disfavor; that there were no sales of stock of the Illinois Co. from March 1, 1913, until the date of reorganization; that none of such stock has ever been listed or dealt in on any stock exchange and has never been dealt in or offered for sale by any dealer in stock or securities or by any of the petitioners; that there have never been any offers to buy such stock outside of the members of the Eisendrath family; and that in the year 1923 the combined income tax return of the Illinois Co. and Delaware Co. showed a net loss.

Three well qualified witnesses testified as to the marketability of the stock in question.

Edwin W. Eisendrath, one of the petitioners herein, who is now president of the Delaware Co. and who has been in the leather business since 1913, testified that the stock of the Delaware Co. had no readily realizable market value in 1923.

David Stern, who is vice president of A. G. Becker & Co., a general investment banking house loaning money to corporations and selling stocks and bonds as underwriters, and which did business with quite a few leather companies, including the Illinois Co. and the Delaware Co., testified that in 1923 the securities of leather companies were in great disfavor and that the stock of the Delaware Co. in September 1923, was absolutely not marketable or salable as a whole.

Arthur W. Newton, vice president and loan officer of the First National Bank of Chicago, the largest national bank in Chicago and the second largest bank in size in Chicago, who has been connected

with that bank for over forty-four years, testified that the stock of
the Delaware Co. did not have a readily realizable market value in
September 1923. Newton further stated that the stock of the Dela-
ware Co. would not be acceptable as collateral for a bank loan. The
First National Bank of Chicago had been doing business with the
Illinois Co. since 1907 and made loans to both the Illinois Co. and
the Delaware Co. Annual statements had been furnished by those
companies to the bank. Newton, in connection with his duties as
loan officer of the bank, has had occasion to accept collateral on
loans and has had experience with the sale of stock of close corpora-
tions which he received as collateral on loans. Newton was, in 1923,
trustee of the Northwestern Leather Co., referred to in our findings
of fact. The object of that trust was to liquidate the company to the
best advantage of the creditors. Difficulty was experienced in liqui-
dating that company and the stockholders received little if anything
in the liquidation.

The opinions of these witnesses are well corroborated by the other
evidence adduced, and their testimony was not contradicted. The
opinion testimony of these witnesses is entitled to consideration. In
*Clarke* v. *Welch, supra,* the court stated:

> That the opinion testimony of plaintiff and expert opinions of other wit-
> nesses is entitled to consideration is amply supported by the decisions of this
> state.

In *Anton M. Meyer, supra,* we stated in part:

> The proof satisfies us that the notes had no readily realizable market value
> at the time of their receipt. Two bank officials, familiar with the business
> and commercial standing of the partnership of Ginocchio, Costa & Co., and
> the individual credit ratings of its members, stated in no uncertain terms that
> there was no market for the notes. * * *

In *Biscayne Trust Co., Executor, supra,* we stated:

> * * * The uncontradicted testimony of a real estate dealer, well qualified
> to testify as to real estate values in and around Miami, establishes that lots
> in Tatum's Ocean Bay Park had no readily realizable market value. * * *

See *Montana Ry. Co.* v. *Warren,* 137 U.S. 348, for general dis-
cussion as to the value of opinion testimony. The Supreme Court
there stated in part:

> * * * In respect to such value, the opinions of witnesses familiar with the
> territory and its surroundings are competent. * * * Here as elsewhere,
> we are driven to ask the opinions of those having superior knowledge in respect
> thereto. * * *

Considering the testimony of these witnesses together with the
other facts adduced, it is our opinion, and we have found as a fact,
that at the time the stockholders of the Illinois Co. received the stock
in the Delaware Co. such stock had no readily realizable market value
within the meaning of the statute.

The respondent contends that there were valuable assets in the Delaware Co. giving the stock of that company a readily realizable market value. He points to the large values at which the assets were carried on the books of the Delaware Co. He also points to the fact that at a meeting of the board of directors of the Delaware Co. held on September 15, 1923, it was stated that the board of directors of that company were of the opinion that the stock of the Illinois Co. had a value of at least $3,200,000, and that the Delaware Co. reported in its books and records the value of $3,200,000 as its investment in the stock of the Illinois Co. From this the respondent argues that the stock of the Delaware Co., after the reorganization, must have been worth $2,500,000, since the Delaware Co. then owned precisely the same assets as were owned by the Illinois Co. except for the $700,000 paid the stockholders of the Illinois Co. at the time of the reorganization. Respondent further points out that in its capital stock tax return the Delaware Co. showed the fair average value of its stock during the period September 1923 to June 30, 1924, as $70.41 per share. However, these facts do not prove that the stock had a " readily realizable market value." In this respect the instant proceeding is similar to *George S. Parker*, 10 B. T. A. 854 (in which " fair market value " was involved instead of " readily realizable market value "), wherein we stated:

* * * We are satisfied that under the conditions that prevailed at the time the petitioner received his stock it could not have been marketed for more than a nominal amount and that because of such unusual conditions its fair market value can not be said to be measurable by either its intrinsic value under normal conditions or by earnings of past years.

In *Andrew B. C. Dohrmann*, 19 B.T.A. 507, we held that the fact that assets back of stock had substantial intrinsic value did not necessarily prove that the stock had a " fair market value." The Board applied the rule that " if, in fact, the evidence in each case proves that the property in question has ' no fair market value ' on the date involved, *neither the taxing authorities nor the courts have authority to construct such a value by means of any set rule or formula*." (Italics supplied.) In *Gladys Bilicke*, 20 B.T.A. 784 (petition for review dismissed on motion of Commissioner, 51 Fed. (2d) 1075), we stated:

We think our views expressed in that case [*A. B. C. Dohrmann, supra*] are pertinent to the question whether or not property has a *readily realizable market value* under the provisions of section 202(c) of the Act of 1921. [Italics supplied.]

None of the cases cited by respondent are governing. None of them involves the determination of " readily realizable market value " except *Fesler* v. *Commissioner*, 38 Fed. (2d) 155; certiorari

denied, 281 U.S. 755, and the evidence there as to lack of readily realizable market value was not as strong and convincing as that in the instant proceeding. That case is clearly distinguishable from the instant proceeding on the facts. There the contract for the exchange of securities provided that the taxpayer should not place any of the securities upon the market within six months for fear it would depress the market for the remainder of the issue. The court stated that this provision was rather persuasive of the fact that the securities had some market value on the date in question in that case. There the only evidence introduced by the taxpayer was the testimony of one witness. Such witness interpreted the word " readily " to mean " immediately." The court pointed out that such a definition was too restricted and that " readily " means " easily or promptly."

Here the petitioners, upon whom rested the burden of proof in the first instance, adduced evidence, which, in our opinion, overcame the presumption in favor of the correctness of the respondent's determination that the stock in question had a readily realizable market value at the time in question. Thereupon the burden shifted to the respondent to go forward with the evidence. This the respondent has failed to do. See *Milton Smith Jr., Executor*, 28 B.T.A. 422.

Since we have held that the stock of the Delaware Co. had no readily realizable market value at the time in question and since the amount of cash, $1,400, which the stockholders of the Illinois Co. received in exchange for each share of their stock in the Illinois Co. does not exceed the basis, $1,410.03, of each share of such Illinois Co. stock, no taxable gain was derived by such stockholders upon the transaction in question.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

GOODRICH concurs in the result.

VAN FOSSAN, SEAWELL, and ADAMS dissent.