MOLLIE NETCHER NEWBURY, TRUSTEE OF THE ESTATE OF CHARLES NETCHER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42435. Promulgated August 9, 1934.

*Joseph R. Little, Esq.,* and *Laurence Graves, Esq.,* for the petitioner.

*Mason B. Leming, Esq.,* for the respondent.

OPINION.

BLACK: The principal question involved herein is one of fact, viz., whether or not the stock received by petitioner in the new Delaware corporation had a readily realizable market value when petitioner acquired it. The respondent determined that the stock in the Delaware corporation had a readily realizable market value at least of equal value with the March 1, 1913, fair market value of the stock in the old Illinois corporation, which he fixed at $4,768,965.64; and that consequently the entire cash payment of $3,655,518.75 constituted profit and taxable income to the petitioner. Petitioner, on the other hand, claims that the stock in the Delaware corporation did not have a readily realizable market value when she received it in exchange for the stock in the Illinois corporation, and that inasmuch as the $3,655,518.75 cash was less than the March 1, 1913, fair market value of $4,768,965.64 of the stock in the Illinois corporation, no taxable income resulted. Petitioner claims that the amount of cash received, under the applicable provisions of the revenue act, goes to reduce the basis.

**50**

The applicable provisions of the Revenue Act of 1921, as amended by the Act of Congress of March 4, 1923, effective January 1, 1923, are printed in the margin.[1]

The statute quoted in the margin, which provides that " no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value ", does not define the meaning of " readily realizable market value." Under such circumstances it becomes the duty of the Commissioner to define the meaning of the term in the administration of the law, and if his definition is a reasonable one it is our duty to give it effect. The Commissioner, in his Regulations 62, article 1564, defines the term as follows:

Property has a readily realizable market value if it can be readily converted into cash or its equivalent substantially equal to the fair value of the property. In other words, the property received in exchange must be readily marketable at substantially its fair value in order that a gain or loss be recognized. * * * Stock in a close corporation may or may not have a readily realizable market value, depending upon all the facts in each particular case. The question whether property has a readily realizable market value, and if so, the amount thereof, is one of fact to be determined in each case in the light of all the surrounding circumstances.

---

[1] SEC. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property ; except that—

\* \* \* \* \* \* \*

(b) The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a) ; but—

(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, *the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market value or price;* [Italics supplied].

\* \* \* \* \* \* \*

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

\* \* \* \* \* \* \*

(2) When in the reorganization of one or more corporations a person receives in place of any stock or securities owned by him, stocks or securities in a corporation a party to or resulting from such reorganization. The word "reorganization," as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation), recapitalization, or mere change in identity, form or place of organization of a corporation, (however effected) ; \* \* \*

(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2) and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the amount of the gain resulting from such exchange shall be computed in accordance with subdivisions (a) and (b) of this section, but in no such case shall the taxable gain exceed the amount of the money and the fair market value of such other property received in exchange.

In *Edwin W. Eisendrath,* 28 B.T.A. 744, we thoroughly considered the question of the meaning and application of the term "readily realizable market value" as used in the quoted section of the Revenue Act of 1921, and it would serve no useful purpose to again review the authorities therein cited. It is sufficient to say that our interpretation of the term was substantially the same as the Commissioner has defined it in his regulations.

In the *Eisendrath* case an Illinois corporation, with a capital stock of 500 shares of the par value of $100 each, was engaged in the tanning business in Chicago, Illinois. It had been very prosperous from its organization in 1904 until after the World War, when the tanning business began to decline. The March 1, 1913, fair market value of its shares was $1,410.03 for each share. In 1923 a reorganization was effected, by which a Delaware corporation was organized with a capital stock of 25,000 shares of the par value of $100 each and exchanged its entire issue of 25,000 shares and $700,000 cash in addition for the 500 shares of stock in the old Illinois corporation. Each stockholder in the old Illinois corporation received in exchange for each share of his stock therein 50 shares of stock in the new Delaware corporation and $1,400 in cash. The respondent in that case determined that the shares of stock exchanged were of equal value and that the stock of the Delaware corporation had a readily realizable market value, and that the entire additional cash payment was profit and constituted taxable income to the recipients. We held, however, that the stock of the new Delaware corporation did not have a readily realizable market value, and as the cash received of $1,400 per share did not equal or exceed the March 1, 1913, value of $1,410.03 per share, no taxable gain resulted.

In the instant case the Commissioner has determined, as he did in the *Eisendrath* case, that the stock of the Delaware corporation which petitioner received in exchange for the stock which the estate owned in the Illinois corporation had a readily realizable market value at least equal to the March 1, 1913, value of the stock in the Illinois corporation and that hence all the cash received in the transaction was taxable gain. This determination of respondent is presumed to be correct, and so many decisions have held that to be true that it is unnecessary to cite authorities. Petitioner recognizes this to be true and has offered much evidence to rebut the determination made by respondent.

Petitioner has made no effort to prove that the stock did not have value. Indeed it is quite clear that the stock did have value—much value—because it unquestionably had large assets behind it, but that is not saying that under the circumstances existing at the time of exchange it had a readily realizable market value. As we said in

*Alexander D. Falck*, 26 B.T.A. 1359, ".Before such a transaction is considered to give rise to taxable gain under the statute, the property received in the exchange must have a readily realizable, market value, i.e., be practically the equivalent of cash." We do not think we can hold that the stock of the Delaware corporation to the extent of its fair value was practically the equivalent of cash at the time it was received. We feel constrained to hold that the weight of the evidence is against the conclusion that the stock of the Delaware corporation had a readily realizable market value at the time of the exchange. Under these circumstances the cash which petitioner received in the transaction will go to reduce the basis of the Delaware corporation stock and any gain in the transaction to be taxable will have to await the future disposal of the stock. Such we believe was the intent of the statute which we have quoted in the margin.

Seven qualified witnesses testified for the petitioner relative to the marketability of the stock in the Delaware corporation, some of whom were participants in the reorganization and loan transactions. The stock was not listed on any exchange and there had been no sales of any shares.

All of these witnesses testified that the stock did not have a readily realizable market value at the time of the exchange. They gave various reasons for their opinions and we do not deem it necessary to report their testimony in detail in this discussion. We think it will suffice to give a summary of their reasons and this summary may be stated briefly, as follows: Under the trust indenture of April 1, 1923, which the Delaware corporation had to give to secure its gold note issue of $3,750,000, it was prohibited from paying any dividends out of anything except earnings which might accrue to the company after April 1, 1923.

It had a principal obligation, plus interest, to meet under that indenture, in excess of $4,704,000 over a period of eight years. Current assets of $4,000,000 at all times had to be maintained. Therefore the $4,704,000 which had to be paid over this term of eight years could only be paid out of future profits after April 1, 1923. The person who would want to buy the stock as of April 26, 1923, would therefore have to agree to pay off $4,704,000 out of future earnings, which would make the chances for any distributable dividends during that time very slim. The stock was not salable unless the person buying it could in a manner satisfactory to Mrs. Newbury, indemnify her and save her harmless from the personal guaranty which she had given to the purchasers of the $3,750,000 gold notes of the Delaware corporation. Under the leases the rentals and taxes amounted to approximately $1,250,000 annually and were burdensome, considering the volume of annual sales of the corpora-

tion, and constituted a prior lien against the assets of the corporation in addition to the heavy payments on the note issue before anything was available for distribution as profits.

One witness, who was a negotiator for the sale or purchase of large department stores, testified he had attempted to interest Isaac Gimbel of Gimbel Bros. of New York, Jesse Straus of Macy & Co. of New York, Samuel Mundheim of Kaufman's of Pittsburgh, S. S. Kresge of the S. S. Kresge Stores, and Morton May of the May Department Stores of St. Louis, in purchasing the Boston Store of Chicago (Delaware corporation), but without success. He testified that the shares of stock in the Delaware corporation did not have a readily realizable market value, nor a fair market value, and gave as reasons substantially the same reasons as we have set out in detail in the foregoing summary.

In view of this testimony we think that petitioner has overcome the presumptive correctness of respondent's determination and that it was incumbent upon the Commissioner to offer evidence in rebuttal which would have satisfactorily established that the stock of the Delaware corporation did have a readily realizable market value at the time of the exchange. This we do not think he has done. Therefore, on this issue, we find in favor of petitioner.

The respondent in determining the deficiency added 25 percent thereof, amounting to $85,676.22, as a penalty for failure to file a return on time. Apparently this was imposed under section 3176, Revised Statutes, as amended by section 1103, Revenue Act of 1926, which provides in part as follows:

In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the Collector in pursuance of law, the Commissioner of Internal Revenue shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax.

It is not disputed that the petitioner did file a fiduciary return on Form 1041 in time, but on advice of tax accountants no report was made of the transaction herein involved, on the theory that it was not taxable and no profit for taxation on Form 1040 was returned.

Since we have held that there is no tax due from the petitioner on the transaction, it follows that the imposition of the penalty was improper.

Reviewed by the Board.

*Decision will be entered for the petitioner that there is no deficiency and no penalty.*