UNITED STATES of America, Appellant,

v.

SILVER QUEEN MINING COMPANY, Appellee.

No. 6413.

United States Court of Appeals Tenth Circuit.

Dec. 20, 1960.

Harold S. Harrison, Attorney, Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., A. Pratt Kesler, U. S. Atty., Salt Lake City, Utah, and Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

George M. McMillan, Salt Lake City, Utah (Dan B. Shields, Salt Lake City, Utah, on the brief), for appellee.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and RICE, District Judge.

LEWIS, Circuit Judge.

The United States initiated this action in the District Court for the District of Utah to condemn some 69 acres of land contained in four patented min-

ing claims owned by the appellee mining corporation. Prior to the instant action the government had had the exclusive surface possession of the properties for eighteen years under both negotiated and condemned use rights in connection with bombing, chemical and bacterial research by the Air Force. This suit condemned the fee and brings for review the method of determination and measure of compensation awarded for the seizure. The amount set by jury verdict, and upon which judgment was entered, was $50,000. The acquiring authority had estimated the value at $2,000. The United States appeals, not questioning the amount as such but contending that the value was set after a trial at which the whole question of just compensation was misconceived in law and that no competent evidence was offered by appellee which can support the judgment under familiar and established rules guiding the compulsion of the Fifth Amendment.[1] Other specific assignments of error are made by the United States but are presented by counsel as additional support for the basic claim that the case was wrongly tried throughout in the sense that requires reversal as in United States v. Certain Parcels of Land, 5 Cir., 149 F.2d 81.

 It has long since been established that just compensation in federal eminent domain cases means the full equivalent in money for the property taken so that as the end result the owner will be left in the same pecuniary position as, but no better than, he was in before the taking. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336. Such value is to be determined as of the time of taking, United States v. Klamath and Moadoc Tribes of Indians, 304 U.S. 119, 58 S.Ct. 799, 82 L.Ed. 1219, and is the equivalent of the fair market value of the property measured by what a willing buyer would pay to a willing seller when neither is acting under compulsion. United States v. Miller, supra. These principles were properly and clearly set out in the court's instructions [2] and cannot be the basis of

---

1. "* * * nor shall private property be taken for public use, without just compensation."

2. "* * * It is self-evident, I should suppose, ladies and gentlemen of the jury, that just compensation must mean at least compensation that is fair. It also means that it must be reasonable compensation. And it represents, ladies and gentlemen, what in the market place would be fair and reasonable market value at the time of the taking of the property, having regard to all of the uses to which the property could be put, including its highest and best use as you folks may determine.

"The standard, then, ladies and gentlemen of the jury, by which you must be guided in determining what the land owner is entitled to receive in this case as damages for the taking and as compensation for the property is the fair and reasonable market value of the property of the Silver Queen Mining Company which the Government has taken.

" 'Just compensation' means that the owner of the land shall be fully and adequately, and even completely, compensated as nearly as possible in dollars and cents for the property which has been taken from him.

"It is your duty as fair and reasonable men and women to arrive at that decision which you believe will fairly and justly compensate the land owner for the land which has been taken, but you will not allow any more than such sum as you may determine to be fair, reasonable, and just compensation.

"It is necessary now, ladies and gentlemen, for me to tell you what is meant by the term 'market value,' in legal parlance. 'Market value,' ladies and gentlemen, means the highest price estimated in terms of money which the land would bring if exposed for sale in the open market with a reasonable time allowed to find a purchaser who buys with knowledge of all the uses and services to which the land can be put, including the highest and best use to which the land is best adapted and for which it is then capable of being used, the seller being desirous of selling, but under no particular urgent necessity for so doing, and the purchaser being desirous of purchasing, but under no particular urgent necessity for purchasing.

"The fact that the land may be desired or needed by the Government for the public use should not be considered by you in determining its fair market value."

any successful claim that either court or jury acted under a misconception of the law in such regard. But correct instructions cannot support a judgment based entirely upon incompetent evidence nor can a correct understanding of applicable legal principles change the nature and effect of proof. United States v. Cox, 10 Cir., 190 F.2d 293. It becomes necessary therefore to examine the proof of value submitted by both the government and the appellee in relation to the subject mining claims.

To sustain its burden the appellee relied primarily upon the expert testimony of mining engineers, geologists, and metallurgists. These witnesses, in effect, expressed their several opinions that the lands were potentially valuable as mining properties although largely undeveloped and unproven;[3] that surface showings and samples taken from a shaft sunk years before indicated the presence of an ore body containing some silver and copper and definitely valuable as a deposit of calcium fluoride (fluorspar); that the claims were worthy of development and would in their opinion prove successful; that they would recommend the expenditure of development money.

Appellee's witnesses also testified that unproven claims such as these were not sold outright for cash upon the open market; that when disposition of such properties was made in the mining industry it was under a lease-option arrangement negotiated by the owner and person providing development money; that such contractual custom usually required the "lessee" to expend a sum certain for development of the property during a time certain; that the owner was guaranteed a percentage of all receipts from ores produced and sold, regardless of actual profit to the lessee, and when and if such percentage payments reached an agreed total the properties became the exclusive properties of the developer. In the event the lessee chose to abandon the project after making the original guaranteed development expenditure, he could do so, and the property then reverted to the owner with any benefit obtained from the development. Appellee's witnesses expressed their opinions that such a lease-option arrangement could be successfully negotiated and obtained for the subject properties and that the total purchase price under the agreement would be $200,000 payable entirely out of potential ore shipments and without any down payment in cash.[4] Various estimates of the cost of proper exploration and development were expressed up to the sum of $50,000.

The testimony of government experts, similarly qualified, was in direct conflict. These experts expressed their professional opinions to the effect that the value of the lands was nil as mining properties; that the mineral showings were such as to negative the existence of ore in commercial quantities; that development was not justified. They indicated the value of the properties to be nominal ($1,500–$2,000) and set such figures only because of such intangibles as "pride of ownership" and love of "desert scenery."

From this evidentiary background springs the government's contention that there is no probative evidence from which the jury could determine just compensation. Emphasis is placed upon the complete absence of an expert opinion upon cash market value and upon the speculative nature of the opinions of values received. And viewed from a purely academic and definition-bound aspect it would be naive to deny the merit of the government's argument. We believe, however, such approach to be too narrow under the circumstances of this case.

In order to obtain substantial justice in eminent domain proceed-

---

3. The government's exclusive surface possession for eighteen years had of course prevented any effort at development during such period.

4. The mining custom does not include a down payment for as one witness stated "no one pays an admission price to a gambling hall."

ings it is necessary for courts to adopt working rules to fit the particulars of the case. United States v. Miller, supra. Such rules have recognized that all properties do not have a readily proven market value, are not sold upon an open exchange, and do not have a standard of comparison available to premise an opinion upon value. Although cash market value may not be proved with certainty the test of just compensation remains the same and the required proof need rise no higher than the circumstances permit. Some speculation is inherent in the ascertainment of value of all resource property, be it mineral, oil, gas or otherwise, and if the quality of proof of value follows the custom of the industry, is the best available, and is sufficient to allow the jury or court to make an informed estimate as to the fact of value, such proof is sufficient to meet the burden. Mr. Justice Brewer, as early as 1890, speaking of the problem of ascertaining value for the condemnation of a mining claim stated:

"* * * The strip taken ran lengthwise through the claim; and upon the trial, witnesses were permitted to testify as to their opinion and judgment of its value. It may be conceded that there is some element of uncertainty in this testimony, but it is the best of which, in the nature of things, the case was susceptible. That this mining claim, which may be called 'only a prospect,' had a value fairly denominated a market value, may, as the Supreme Court of Montana well says, be affirmed from the fact that such prospects are the constant subject of barter and sale. Until there has been full exploiting of the vein its value is not certain, and there is an element of speculation, it must be conceded, in any estimate there-

of. And yet, uncertain and speculative as it is, such prospect has a market value, and the absence of certainty is not a matter of which the railroad company can take advantage when it seeks to enforce a sale. Contiguous to a valuable mine, with indications that the vein within such mine extends into this claim, the Railroad Company may not plead the uncertainty in respect to such extension as a ground for refusing to pay the full value which it has acquired in the market by reason of its surroundings and possibilities. * * *" Montana Railway Company v. Warren et al., 137 U.S. 348, 352, 11 S.Ct. 96, 97, 34 L.Ed. 681.

■ The jury here by its verdict found credible the opinion of appellee's experts that the condemned claim had value as mining properties and rejected the government's appraisement that the lands were desert waste. As aids in determining value the jury was given enlightening information relative to the custom of the industry in the development and ultimate sale of mining properties with such custom particularized to the subject claims. Estimates and opinions were given as to the possible extent of the deposit, the cost of development and the ultimate reward to the owners if the mines should develop commercially. Admittedly the quality of the proof was such that the jury was faced with the necessity of conjecture; but we do not believe the verdict to be based upon pure speculation but rather to be an informed finding based upon competent evidence reaching a standard dictated by the nature of the case.[5]

We find, therefore, no cause to set aside the verdict as founded upon either a general misapplication of legal principles, insufficient evidence to warrant the verdict, or error in the instructions in this particular.

---

5. In United States v. Miller, supra, it was held that increased value cannot be obtained for the landowner because of the government's own actions. Our case perhaps presents the apposite in equitable principle. No advantage should accrue to the government because of the difficulties of proof occasioned appellee because the United States had held possession of the claims for eighteen years and had thus prevented any possibility of development during those years.

■ Although the United States has indicated that primary reliance is placed upon the contention of error that we have discussed, other and numerous complaints are made of rulings, instructions and remarks of the trial court. We have carefully considered such assignments of error and though we find merit to some of them [6] we find no error warranting a reversal of the judgment. Nor do we find any accumulation of errors requiring a reversal in the interest of justice.

The judgment is accordingly affirmed.

---

6. For example, the instructions stated that the government's position was that the properties "had no value at all" and that the "government's witnesses take the position that unless there is blocked-out ore or positive ore in sight the mining property has no value at all." The true position of the government was that the properties had no value as mining properties and but a nominal value for other purposes as we have indicated in the body of the opinion. The other inaccuracy in the instructions would have been correct if limited to the testimony of one government witness. We do not believe these errors misled the jury in any way. Similarly, although the trial court's remarks indicated that he was unsympathetic with both the government's legal and factual positions, we here hold that the trial court was not in error as to legal principles and the instructions carefully told the jury to disregard any indication from the court as to his beliefs as to matters of fact.