UNITED STATES of America,
Plaintiff,

v.

287.89 ACRES OF LAND, MORE OR
LESS, Situate IN CLEARFIELD COUN-
TY, COMMONWEALTH OF PENN-
SYLVANIA, and Howes Leather Com-
pany, Inc., et al., Defendants.

Civ. A. No. 62-395.

United States District Court
W. D. Pennsylvania.

Jan. 20, 1965.

See also, D.C., 241 F.Supp. 456.

Gustave Diamond, U. S. Atty., by
Robert E. Tucker, Asst. U. S. Atty.,
Pittsburgh, Pa., for plaintiff.

Joseph J. Lee, Clearfield, Pa., for de-
fendant, Mary Core Watts.

MARSH, District Judge.

After non-jury trial and a view of the
premises involved, the court makes the
following:

FINDINGS OF FACT

1. On May 29, 1962, the United States
of America, the plaintiff, condemned,

inter alia, a tract of land in Greenwood Township, Clearfield County, Pennsylvania, known as Tract 504, containing 3.42 acres, reserving the underlying coal, clay and mining rights.[1] This land was condemned in connection with the construction and establishment of the Curwensville Reservoir Project in the West Branch of the Susquehanna River Basin.

2. In 1927 Wendell P. Watts owned a 52.53-acre tract of land, except the clay and mining rights, which, by deed dated April 28, 1927 and recorded on June 2, 1961 in the Recorder's Office of Clearfield County in Deed Book Vol. 489, page 327, he conveyed to V. I. Shuss, reserving, however, a portion thereof which is the condemned Tract 504 (Watts' Ex. 1). At the date of taking, the fee simple title to this Tract 504, except the clay and mining rights aforesaid, was vested in Mr. Watts, now deceased.

3. Tract 504 is a rectangular strip of land bounded on the south by the West Branch of the Susquehanna River and, at the time of taking, on the north by the right-of-way of the New York Central Railroad Company. It fronts 1,000 feet on the northerly shore of the river and extends in a northerly direction to the Railroad right-of-way varying distances averaging about 55 feet at the sides to a maximum of 120 feet (Government's Ex. 10).

The land rises gradually from the river's edge to a height of approximately 4 or 5 feet and from this bank is practically level to the Railroad right-of-way where it rises abruptly and steeply up a mountainside. The right-of-way of Highway Route 969 paralleled the Railroad right-of-way and lay to the north thereof. There is no vehicular access from the highway across the Railroad right-of-way to Tract 504.

No structure has been erected on this tract; trees and brush concealed the railroad tracks and the highway aforesaid.

4. At the time of taking, Mr. Watts and Mary Core Watts, his wife, also owned contiguous tracts of land (Tracts 516 and 516E) on the south shore of the river opposite Tract 504. These tracts, hereinafter called the homestead property, contained approximately 41 acres, including a landscaped area of 18 acres, having thereon erected a two-story frame dwelling, a garage, and, out of sight to the west, two smaller dwellings called the mill house and hunting lodge.

The main dwelling was occupied by Mr. and Mrs. Watts as their home since their marriage in 1938; it faces the river and the eastern part of Tract 504 on the opposite shore. The land rises about 15 feet from the river's edge and is level for some distance to the south and then rises steeply up a mountainside. The area surrounding the home has been beautifully landscaped by the Watts with a very large grass lawn, flower gardens, hemlock hedge, white pine stand, and rhododendron paths. Along the river bank are trees and foliage; however, in front of the house is a cleared space providing a view of Tract 504 and the mountainside across the river. A lookout has been constructed around a large tree to the west of the house also providing a view of Tract 504 across the river and the mountainside. No habitation or other structure is visible from the Watts' land. Access is by a narrow township road which leads from the western edge of the landscaped area south to the top of the mountain and connects there with an improved highway. At the time of taking, the homestead property was an exceptionally well kept country estate, isolated in the heart of the mountains, and designed to insure privacy which the owners so obviously desired.

6. Since 1927, Tract 504 was used by Mr. Watts in conjunction with the homestead property. Not only did it provide a scenic view of forested land across the river from the homestead property, but also served as a buffer

---

1. See: Complaint and Declaration of Taking; Watts' Ex. 1, being deed from Wendell P. Watts to V. I. Shuss, reserving clay, coal, and mining rights; transcript of pretrial conference of October 20, 1964, p. 7.

area against unwanted construction and intruders. The homestead property and Tract 504 were considered as one property unit by Mr. Watts since 1927 and by Mr. and Mrs. Watts since their marriage in 1938. It was called Kerrmoor.

The river which flows past the main dwelling is not navigable; it averages about 100 feet wide (Government's Ex. 10); the water is clear and except in the spring averages 2½ feet deep; there is a swimming hole near the opposite shore which is 6 feet to 8 feet deep.

A vehicular bridge and a swinging foot bridge at one time spanned the river connecting the tracts, but both structures were taken out prior to 1938. Access to Tract 504 from the homestead property normally is by means of a ford across the river.

7. Since 1938 until the time of taking, there has been common ownership in Mr. Watts and unity of use by Mr. and Mrs. Watts of Tracts 516, 516E, and 504. This unity of use has been of an æsthetic nature as well as of a practical nature to protect against intrusion and to insure undisturbed arboreal scenery and seclusion.

8. The clay and mining rights are now owned by Harbison-Walker Refractories Company.[2] There is no proof that there is any merchantable clay or coal underlying Tract 504. Disturbance of the surface is only a remote possibility.[3]

9. Wendell P. Watts died on June 26, 1964, testate, and by his Will duly proved and approved August 26, 1964, gave, devised and bequeathed all his property, real, personal and mixed, to his wife, Mary Core Watts.

10. Considered as an integral part of the homestead property, the highest and best use of Tract 504 was as a scenic buffer area to a beautiful secluded country estate through which the shallow river flows in the heart of a scenic mountainous area.

11. Considered separately, the highest and best use of Tract 504 was as a tree farm and as a site for three or four cottages fronting on the river, with adjacent swimming facilities, for which the tract was ideally suited; its market value was diminished to some extent by limitations on ingress and egress.

12. Considered as an entity, the damage incurred for the taking of Tract 504 and the severance damage done to the homestead property is $2,100.00. The damage to Tract 504, considered as a separate parcel, is $600.00.

## DISCUSSION

All the evidence relevant to the claim for severance damages was produced by the defendant, the Government contending that such a claim was unwarranted. Mr. McGrath, the defendant's expert, testified that he knew the condemned property, as well as the homestead property, and that the market value thereof as a unit was $85,000.00 prior to the taking and $82,500.00 after the taking. He testified that there were no comparable sales in the vicinity. It was established that for many years the condemned tract was used in connection with and as a part of the homestead property. From the evidence and our view, we are convinced that the three tracts comprising the estate were treated and used as a whole, and that the condemned tract was an integral part of the homestead property, reasonably and substantially necessary to its enjoyment. Sharp v. United States, 191 U.S. 341, 354, 24 S.Ct. 114, 48 L.Ed. 211, affirming 112 F. 893, 57 L.R.A. 932 (3d Cir. 1902).

The Government's expert, Mr. Bromfield, did not consider the value of the Watts' estate as a whole. In arriving at his estimate of $359.00 for Tract 504, separately, he relied on two sales of

---

2. See opinion filed this day in an earlier trial at this civil action (United States v. 287.89 Acres of Land, etc. [Harbison-Walker Refractories Company], 241 F. Supp. 456) wherein the mining rights are fully set forth.

3. See f.n. 2, supra.

mountain land which did not have river frontage comparable to Tract 504.[4] Those tracts were comparable to Tract 504 only in that they were unimproved forest lands. They certainly were not comparable to the homestead property and Tract 504 considered as one complete entity.

Moreover, his knowledge or recollection of the condemned tract considered separately was quite dim, and he obviously failed to give its advantageous location on the river the value to which it was entitled for cottage sites.[5]

■ There was no evidence that any other large residential country estates, through which the river flows, existed in this mountainous country. Such an estate is unique and comparable sales would be unlikely. However, it is not always essential that an opinion witness has knowledge of comparable sales. Montana Railway Co. v. Warren, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681; United States v. Silver Queen Mining Company, 285 F.2d 506 (10th Cir. 1960); III Wigmore on Evidence, 3d ed., §§ 714(3), 714(4).

■ In determining just compensation in this case for the taking of one of three tracts of land which were in the same ownership and in fact have been used and treated as a unit, we think it is the law that they should be treated as a unit in estimating damages. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165; Sharp v. United States, supra; International Paper Company v. United States, 227 F.2d 201 (5th Cir. 1955); United States v. Honolulu Plantation Co., 182 F.2d 172 (9th Cir. 1950); Baetjer v. United States, 143 F.2d 391 (1st Cir. 1944).

■ The fact that a shallow nonnavigable water course divides land into two parcels should not deprive the owners of compensation for injury done to the remaining parcel by the condemnation of the other parcel when the evidence establishes that both parcels were used as a single residential country estate. As stated in Baetjer v. United States, supra, 143 F.2d pp. 394–395:

"The first question before us * * * and the basic one in all severance damage cases, is what constitutes a 'single' tract as distinguished from 'separate' ones. The answer does not * * * depend necessarily upon whether the owner acquired his land in one transaction or even at one time. * * * Neither does it wholly depend upon whether holdings are physically contiguous. Contiguous tracts may be 'separate' ones if used separately * * * and tracts physically separated from one another may constitute a 'single' tract if put to an integrated unitary use or even if the possibility of their being so combined in use 'in the reasonably near future' * * * 'is reasonably sufficient to affect market value.' * * *

"*Integrated use, not physical contiguity, therefore, is the test.* * * * Tracts physically separated from one another frequently, but we cannot say always, are not and cannot be operated as a unit, * * * but separation still remains an evidentiary, not an operative fact, that is, a subsidiary fact bearing upon but not necessarily determinative of the ultimate fact upon the answer to which the question at issue hinges." (Emphasis supplied.)

Whether non-contiguous tracts are to be treated separately or as one unit is generally a question of fact for the fact-finding tribunal. Sharp v. United States, supra; United States v. Mills, 237 F.2d

---

4. Transcript of October 20, 1964, pp. 25–26.

5. Contrast with the value of $360.00 he placed on Tract 503–2, at Civil Action No.

64–663, an irregular tract containing 3.44 acres situate on the side of the mountain without river frontage. (Transcript of October 20, 1964, pp. 19, 30–31.)

401 (8th Cir. 1956); 4 Nichols, Eminent Domain, §§ 14.3, 14.31.

 We think the evidence establishes that the three tracts owned by the Watts as a unit, at the time of taking Tract 504, were an integral whole; they have been continuously used as a large residential country estate to which the dividing river contributed uniqueness, attractiveness and additional value. The taking of Tract 504 appreciably diminished the value of the estate. The circumstance that the river divides the property does not stand in the way of recovery of damages for depreciation of the entire estate. The purpose of the law is to secure the landowner full compensation. Severance damages were allowed in Hicks v. United States for Use of T. V. A., 266 F.2d 515 (6th Cir. 1959) —a farm divided by a main public highway; United States v. Mills, supra,—a farm divided by a levee; United States v. Waymire, 202 F.2d 550 (10th Cir. 1953)—non-contiguous parts of a ranch; Cameron v. Pittsburgh & L. E. R. Co., 157 Pa. 617, 27 A. 668, 22 L.R.A. 443 (1893)—farmland divided by a canal. In Morris v. Commonwealth, 367 Pa. 410, 80 A.2d 762, 764 (1951), it was stated:

> "But, where there are two tracts separated by a highway or water course or railway, if they are used together as a single enterprise and the whole is depreciated in value as a result of the taking of a part, the damages suffered thereby may be compensated. Where lands are inseparably connected in use, the injury to one must necessarily and permanently injure the other."

See also, 29A C.J.S. Eminent Domain § 140, pp. 592–593; 18 Am.Jur., Eminent Domain, § 270, p. 910; 4 Nichols, Eminent Domain, §§ 14.31, 14.31[1], 14.31 [2].

## CONCLUSIONS OF LAW

1. Tract 504 was lawfully condemned by the United States of America for public use in connection with the Curwensville Reservoir Project.

2. This court has jurisdiction of the parties and the subject matter.

3. At the time of taking on May 29, 1962, title to Tract 504, except the clay and mining rights, was vested in Wendell P. Watts, now deceased, and title to Tracts 516 and 516E was vested in Wendell P. Watts and Mary Core Watts, his wife.

4. At the time of taking, there was unity of ownership of Tracts 504, 516 and 516E.

5. At the time of taking, there was unity of use of Tracts 504, 516 and 516E, i. e., as a residential country estate.

6. Just compensation for the taking of a part of the estate, i. e., Tract 504, and the severance damage to the remainder is $2,100.00.

7. Mary Core Watts, individually and as Executrix of the Estate of Wendell P. Watts, deceased, is entitled to receive the compensation.