UNITED STATES of America,
Plaintiff-Appellee,

v.

45,131.44 ACRES OF LAND, MORE OR
LESS, IN EL PASO, FREMONT AND
PUEBLO COUNTIES, STATE OF COL-
ORADO, et al., Defendants,

Pueblo Quarries, Inc., and General Re-
fractories Co., Inc., Defendants-
Appellants.

No. 72-1784.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 23, 1973.

Decided Aug. 24, 1973.

Eva R. Datz, Atty., Dept. of Justice
(Kent Frizzell, Asst. Atty. Gen., James
L. Treece, U. S. Atty., B. Richard Taylor,
Asst. U. S. Atty., George R. Hyde, Sophie
Cozier, and Max Findley, Attys., Dept.
of Justice, on the brief), for plaintiff-
appellee.

James A. Clark, and Walter A. Steele,
Denver, Colo. (Berge, Martin & Clark,
Warren O. Martin, Denver, Colo., Ken-
ney, Stevens, Clark & Semple, Henry W.
Fulton, Jr., Pittsburgh, Pa. and White &
Steele, Denver, Colo. on the briefs) for
defendants-appellants.

Before PHILLIPS, HILL and HOL-
LOWAY, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

The United States brought this action to acquire by condemnation 45,131.44 acres of land situated in El Paso, Fremont, and Pueblo Counties, Colorado, against a large number of persons, natural and artificial, owners of interests in such land.

A judgment was entered on March 3, 1972, which disposed of all of the claims of owners of interests in the land sought to be condemned, except the claims of General Refractories Co., Inc., (Refractories) and Pueblo Quarries, Inc., (Pueblo Quarries) of interests in a tract designated as 447, containing 680 acres of land, and of interests in a tract designated as 335, containing 120 acres of land.

Such judgment adjudged that there should be paid to such owners, except Refractories and Pueblo Quarries, the sum of $6,000, and ordered that the United States pay into court an addition to the amount which it had deposited in the court, which would amount to such award. Such judgment became final and no appeal was taken therefrom. As a result, all of the claims have been disposed of, except those of Refractories and Pueblo Quarries, and it is their claims that are involved in this appeal.

Pueblo Quarries is a Colorado corporation, and Refractories is a Pennsylvania corporation, authorized to transact business in the State of Colorado.

Pueblo Quarries had acquired from the fee owners the right to mine and remove refractory clay from 680 acres of land within tract 447 and 120 acres within tract 335, both tracts being included in the lands which the United States sought to condemn. Both tracts were underlaid with deposits of refractory clay. Pueblo Quarries had leased to Refractories the right to mine and remove such clay from both tracts.

The case was tried as to such tracts, aggregating 800 acres. The jury returned a verdict in favor of Pueblo Quarries and Refractories in the amount of $115,000. Judgment was entered on such verdicts and Pueblo Quarries and Refractories have duly appealed therefrom.

Refractory clay is a clay that is resistant to extremely high temperatures and is used in heavy industry, mainly for lining steel furnaces and in the construction of other things where material resistant to high temperatures is required. It is of two types, plastic and flint. The plastic is used for a bond for the flint clay.

Warren Longley, who specialized in economic geology and was a professor of geology at the University of Colorado, had made an extensive investigation of the deposits of refractory clay in the Colorado area, in Pueblo, Fremont, and El Paso Counties, which included the 800 acres in tracts 335 and 447. He estimated that there were 700,000 tons of recoverable refractory clay on such 800 acres.

Before the trial, the United States made available to counsel for Pueblo Quarries and Refractories a list of comparable sales and leases considered by its experts on valuation, Bernard Meltzer and Robert J. Mitchell. At the trial, Meltzer testified he was an appraiser and valuation engineer and duly qualified as such by education and experience. He was the holder of several designations in the American Institute of Real Estate Appraisers, the American Society of Appraisers, and the Society of Real Estate Affairs. The American Society covers the field of evaluation of natural resources. He was experienced in financial and land economics. He was licensed as a professional engineer and real estate broker in Pennsylvania. He had many years of experience in his specialty. He had qualified in many courts as an expert appraiser and valuation engineer. He had testified more times for the property owner than for the plaintiff in condemnation cases.

He testified that he had made a determination of the fair market value of the right to mine and remove the refractory clay from the 800 acres of land.

During the direct examination of Mr. Meltzer, the following occurred:

"Q. Mr. Meltzer, you understand I am asking you now about the range of prices for not just ranch land that has no clay, but clay bearing land that is comparable in quality and quantity as is this subject property. Do you understand that?

"A. I do.

"Q. Did you make an investigation as to what clay bearing land of that—in that category was selling for about the time of taking in that area?

"A. I did.

"Q. What did you find out about it?"

Mr. Clark, counsel for Pueblo Quarries, objected, as follows:

"MR. CLARK: Your Honor, I object to that range. If they are relying on sales, we ought to know what those sales are.

"THE COURT: Well, you will have an opportunity to cross-examine, and if he does not testify to the sales, that may come through Mr. Findley's examination, you will have an opportunity to inquire. If this is an objection, it is overruled.

"THE COURT: Proceed, Mr. Findley.

"Q. (By Mr. Findley) Okay.

"A. I found, Mr. Findley, of clay bearing lands or rights to mine clay of similar quality, ranged from $30.00 an acre to $554.00 an acre. The average was $208.-00 an acre, and the median was $112.00 an acre.

"Q. All right, Mr. Meltzer. Now, using this market comparison approach or principle, and recognizing here that we are talking about a site that has been pretty well proved up—

"A. Yes.

"Q. —what is the indicative value of the subject property using this method?

"A. Yes. Using this method, Mr. Findley, using this principle, the indicated value of the subject property is $91,000 or approximately $700 an acre for lands that are underlain with clay.

"Q. Wait a minute. Let me understand that. $91,000 for the whole 800 acres?

"A. That's right, for the total.

"Q. You are allocating the purchase price of so many acres that contain clay, and then some acres that may contain clay, and some acres that may contain no clay.

"A. That is correct, Mr. Findley, this is a tract allocation. The answer is $91,000 arrived at on an overall basis. What I have given you is an allocation * * *."

The witness then said a knowledgeable buyer would pay around $91,000 for all the rights and interests to mine clay from the 800 acres of land contained in tract 335 and tract 447.

■ Pueblo Quarries and Refractories assert that the court erred in admitting the sales range of other properties introduced in evidence, in that there was no showing that the other properties were similar to their interests in the 800 acres.

■ In condemnation cases, comparability is a question of fact, and the court has a broad discretion in determining the admissibility of evidence of comparable sales.[1]

Here, counsel for Pueblo Quarries and Refractories had a list of the comparable sales and leases considered by the Government's experts, and they had full opportunity to show lack of comparability

1. United States v. 2,635.04 Acres of Land, etc., 6 Cir., 336 F.2d 646, 649; Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 894; United States v. Certain Interests in Property, Etc., 2 Cir., 326 F.2d 109, 113.

or similarity on cross-examination, which they did not do. Indeed, cross-examination showed that one of the expert witnesses had rejected a tract as comparable, because it was too remote in time.

■ A dissimilarity between sales of property considered by an expert witness and the property involved goes to the weight, rather than to the admissibility, of the expert testimony.[2]

On cross-examination, counsel for Pueblo Quarries and Refractories did not ask Meltzer to state the sales and leases he considered as comparable, no doubt because they already had that information. Neither did they show or attempt to show that the sales and leases considered by the experts for the United States were not comparable to the refractory clay in the 800 acres involved.

We conclude that the admission of the evidence of Meltzer was not erroneous.

Pueblo Quarries and Refractories asked the court to give the following instruction:

"In every condemnation proceeding, the problem is to determine what the property owner has lost as a result of the taking; and not what the Government may have gained.

"Just compensation is intended to cover the loss caused the owner by the taking of his property for public use, and not the value of the property as applied to the public use. * * *"

■ The court refused to give that instruction. However, the court instructed the jury on just compensation, as follows:

" 'Just compensation' is not the value of the property to the defendants on the one hand, nor is it the value to the Government on the other hand. The just compensation to be paid by the Government is measured by the fair market value of the property taken as of May 1, 1966, and no more and no less. To award more would be unjust to the public; to award less would be unjust to the defendants."

The only objection made by counsel for Pueblo Quarries or Refractories was the refusal of the court to give the requested instruction set out above.

Under the facts and circumstances in the instant case, the court's instruction on just compensation correctly followed the applicable law.

In the case of Certain Land in City of Washington, D. C. v. United States, 122 U.S.App.D.C. 400, 355 F.2d 825, 826, the court held that "just compensation" is the value of the interest taken; that such value is not the value to the owner for a particular use or to the condemnor for some special purpose, but is the fair market value for the property taken.[3]

Fair market value of property is what an owner willing but not compelled to sell will take and what a buyer willing but not compelled to buy will give for such property.[4]

■ In cases where the facts and circumstances are unusual and a substitution of another method of determining just compensation will afford a better method of making the owner whole than will the use of market value, such other method should be used. See United States v. 20.53 Acres of Land in Osborne County, Kansas, 10 Cir., 478 F.2d 484, 487.

But it is a well settled general rule that just compensation should be mea-

2. Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 895.

3. See also United States v. Martin, 10 Cir., 267 F.2d 764, 771; Cudahy Bros. Co. v. United States, 7 Cir., 155 F.2d 905, 906–907; Dore v. United States, 119 Ct.Cl. 560, 97 F.Supp. 239, 243; United States v. Silver Queen Mining Company, 10 Cir., 285 F.2d 506, 508; Love v. United States, 8 Cir., 141 F.2d 981, 982.

4. United States v. Douglas, 9 Cir., 207 F.2d 381, 384; Washington Water Power Co. v. United States, 9 Cir., 135 F.2d 541, 542; Onego Corporation v. United States, 10 Cir., 295 F.2d 461, 463; United States v. Silver Queen Mining Company, 10 Cir., 285 F.2d 506, 508.

sured by the market value of the property taken. (See cases cited in Note 3.)

We can perceive of no reason why market value should not have been used to measure just compensation in the instant case.

We conclude the court did not err in refusing to give the instruction requested by Pueblo Quarries and Refractories.

Affirmed.

