## MONTANA RAILWAY COMPANY *v.* WARREN.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF MONTANA.

No. 80. Argued November 18, 19, 1890. — Decided December 8, 1890.

In this case the record contained the pleadings and a motion for a new trial, which motion was authenticated by the trial judge and set forth at length all the proceedings at the trial, including the evidence, the exceptions to testimony, the instructions to the jury, the exceptions to those instructions, a bill of exceptions in due form, properly certified by the presiding judge, the verdict, and the judgment on the verdict. This proceeding was in accordance with the practice authorized by the Statutes of Montana. *Held*, that it was sufficient for the purposes of review here. *Kerr* v. *Clampitt*, 95 U. S. 188, distinguished from this case.

In this court inquiry is limited to matters presented to and considered by the court below, unless the record presents a question not passed upon by that court, which is vital, either to the jurisdiction, or to the foundation of right, and not simply one of procedure.

In a proceeding under the right of eminent domain to condemn, for use in the construction of a railroad, an undeveloped "prospect" in mineral land, the testimony of a competent witness, familiar with the country and its surroundings, as to the value of the land taken, may be received in evidence, inasmuch as such property is the constant subject of barter and

sale, although its absolute and intrinsic value may be uncertain before development.

As it is difficult to lay down any exact rule as to the amount of knowledge which a witness as to the value of lands condemned for use in the construction of a railroad must possess, the determination of that matter must rest largely in the discretion of the trial judge.

THIS action was commenced by a petition filed by the Montana Railway Company, upon which Commissioners were appointed, to assess the damages to the respondents, for a right of way of the company's line of road over a certain mining claim in Silver Bow County, Montana, known as the Nipper Lode. The Commissioners assessed the damages at $1552. From their award Warren appealed to the District Court of the second judicial district of Silver Bow County where the case was tried before a jury who returned a verdict assessing the damages at $7000. A motion by the railway company for a new trial having been overruled and denied, and a judgment rendered on the verdict, the railway company carried the case to the Supreme Court of the Territory of Montana, where the judgment below was affirmed. The company thereupon sued out this writ of error. The case is stated in the opinion.

*Mr. John F. Dillon,* (with whom was *Mr. Harry Hubbard* on the brief,) for plaintiff in error.

*Mr. S. S. Burdett* for defendants in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The plaintiff in error desiring to construct its railroad through a tract of land belonging to the defendants in error, the same being a mining claim known as the Nipper Lode, situated in Silver Bow County, Montana Territory, took appropriate proceedings for the condemnation of a right of way. The appraisers assessed the damages at $1552. From such appraisement the defendants appealed to the District Court ; and on trial there the jury found the damages to be $7000, for which, with costs, judgment was entered against the rail-

road company.  An appeal was taken to the Supreme Court of the Territory, which affirmed this judgment; which judgment of affirmance has been brought before us for consideration.  The opinion of that court will be found in 6 Montana, 275.

A preliminary question is presented by the defendants in error : They insist that no bill of exceptions was taken at the trial, and that therefore no rulings of the trial court are before us for consideration, citing as authority the case of *Kerr* v. *Clampitt*, 95 U. S. 188.  In that case, as in this, after the trial a statement of the errors alleged, upon which a motion for a new trial was based, was prepared and filed ; but, although signed by counsel, it was held by this court to be not the equivalent of a bill of exceptions, and to be available only for the purpose expressed, to wit, the motion for a new trial.  There was in that case no stipulation that the statement should be treated as a bill of exceptions, or be available for other purposes than that of a new trial.  It was not authenticated by the trial judge.  Lacking that authentication, it was adjudged available only for the purpose named; and that it did not bring into the record, for review, in this court, the questions presented.  In this case the proceedings on the trial are embodied in a statement prepared like that for the purpose of a motion for a new trial ; but in addition, it is authenticated by the trial judge as a correct statement of the proceedings.  Further than that, at the trial a bill of exceptions was prepared in respect to the rulings of the court on instructions, signed by the trial judge and filed at the time, which bill of exceptions was incorporated in the statement.  So that we have a separate and perfect bill of exceptions as to the ruling of the court on the matter of instructions ; and a statement of all the proceedings in the trial, approved by counsel and authenticated by the trial judge.  This proceeding was authorized by the statutes of Montana, and must be adjudged. as sufficient for the purposes of review here.

When the case was brought to the Supreme Court of Montana, no new assignments of error were made.  The only specifications of error were in the statement prepared for the

motion for a new trial in the District Court. Perhaps nothing more was necessary; and all the questions arising on the trial may have been open to consideration. Be that as it may, the opinion of the Supreme Court opens by saying: "There are assignments of error in the statement which are not referred to in appellant's brief, and which will therefore not be considered by this court. Those relied upon are as follows." It then discusses them; and closes with the statement that "these are all the errors complained of and relied upon in appellant's brief." The court also comments upon the character of the record, and says: "It is certainly apparent that it is not such a record as should be filed in this court." The question now arises whether our inquiry is limited to the matters presented to and considered by that court, or should be broadened to all matters that transpired at the trial. Obviously, the former. Error is alleged in the judgment of the Supreme Court of the Territory; and if, in all matters presented to it, its rulings were correct, it cannot be affirmed that its judgment was erroneous, because there were in the record matters not vital to the question of jurisdiction or the foundation of right, but simply of procedure, to which its attention was not called, and in respect to which its judgment, was not invoked. All such matters must be considered as waived by the complaining party. It would be an anomaly if a party feeling himself aggrieved by the rulings of a trial court could appeal to the Supreme Court of his Territory, and invoke its judgment on certain alleged errors; and, when defeated there, could transfer the judgment of that Territorial Supreme Court to this, and ask a reversal here of its judgment on grounds involving mere matters of procedure in the prior trial, to which its attention was not directed. It is fundamental that when the judgment of a court is challenged in error, its rulings alone are open to consideration. Of course, if the trial court had no jurisdiction, that is a matter which is always open, and the attention of the court of last resort may be called thereto in the first instance; but mere matters of error may always be waived, and they are waived when the attention of the reviewing court is not called to them. Our conclusion, therefore,

is that our inquiry in this case is only in relation to the matters presented to and reviewed by the Supreme Court of the Territory.

They are three in number: First, that the verdict indicates passion and prejudice. Obviously, there is no foundation for this. If the testimony admitted by the trial court was competent, there was ample foundation for the verdict. If the witnesses were to be believed and their testimony was competent, the verdict was not excessive; and the second of the three points presented to the Supreme Court, which was that the evidence was not sufficient to justify the verdict, thus fails. There remains for consideration but a single point — that there was admitted in evidence on the trial the opinions of witnesses as to the value of the land, which were not based upon the sale of the same or similar property, and were not, therefore, the opinions of persons competent to so testify. It appears that the land taken was a strip running through a mining claim, which had been patented and belonged to the defendants in error. The claim adjoined the Anaconda mining claim, which had been developed and worked, and demonstrated to contain a vein of great value. The claim in controversy had been developed so far as to indicate that possibly, perhaps probably, the same rich vein extended through its territory. It had not been developed so far that this could be affirmed as a fact proved. The strip taken ran lengthwise through the claim; and, upon the trial, witnesses were permitted to testify as to their opinion and judgment of its value. It may be conceded that there is some element of uncertainty in this testimony; but it is the best of which, in the nature of things, the case was susceptible. That this mining claim, which may be called " only a prospect," had a value fairly denominated a market value, may, as the Supreme Court of Montana well says, be affirmed from the fact that such " prospects " are the constant subject of barter and sale. Until there has been full exploiting of the vein its value is not certain, and there is an element of speculation, it must be conceded, in any estimate thereof. And yet, uncertain and speculative as it is, such " prospect " has a market value; and the absence of cer-

tainty is not a matter of which the railroad company can take advantage, when it seeks to enforce a sale. Contiguous to a valuable mine, with indications that the vein within such mine extends into this claim, the railroad company may not plead the uncertainty in respect to such extension as a ground for refusing to pay the full value which it has acquired in the market by reason of its surroundings and possibilities. In respect to such value, the opinions of witnesses familiar with the territory and its surroundings are competent. At best, evidence of value is largely a matter of opinion, especially as to real estate. True, in large cities, where articles of personal property are subject to frequent sales, and where market quotations are daily published, the value of such personal property can ordinarily be determined with accuracy; but even there, where real estate in lots is frequently sold, where prices are generally known, where the possibility of rental and other circumstances affecting values are readily ascertainable, common experience discloses that witnesses the most competent often widely differ as to the value of any particular lot; and there is no fixed or certain standard by which the real value can be ascertained. The jury is compelled to reach its conclusion by comparison of various estimates. Much more so is this true when the effort is to ascertain the value of real estate in the country, where sales are few, and where the elements which enter into and determine the value are so varied in character. And this uncertainty increases as we go out into the newer portions of our land, where settlements are recent and values formative and speculative. Here, as elsewhere, we are driven to ask the opinions of those having superior knowledge in respect thereto. It is not questioned by the counsel for plaintiff in error that the general rule is that value may be proved by the opinion of any witness who possesses sufficient knowledge on the subject; but their contention is, that the witnesses permitted to testify had no such sufficient knowledge. It is difficult to lay down any exact rule in respect to the amount of knowledge a witness must possess; and the determination of this matter rests largely in the discretion of the trial judge. *Stillwell Manufacturing Co.* v. *Phelps*, 130 U. S. 520; *Law-*

rence v. *Boston*, 119 Mass. 126; *Chandler* v. *Jamaica Pond Aqueduct Corporation*, 125 Mass. 544. The witnesses whose testimony is complained of, all testified that they knew the land and its surroundings; and many of them that they had dealt in mining claims situated in the district, and had opinions as to the value of the property. It is true, some of them did not claim to be familiar with sales of other property in the immediate vicinity; and the want of that means of knowledge is the specific objection made in the Supreme Court of the Territory to the competency of those witnesses. But the possession of that means of knowledge is not essential. It has often been held that farmers living in the vicinity of a farm whose value is in question, may testify as to its value although no sales have been made to their knowledge of that or similar property. Indeed, if the rule were as stringent as contended, no value could be established in a community until there had been sales of the property in question, or similar property. After a witness has testified that he knows the property and its value, he may be called upon to state such value. The means and extent of his information, and therefore the worth of his opinion, may be developed at length on cross-examination. And it is fully open to the adverse party, if not satisfied with the values thus given, to call witnesses in the extent of whose knowledge and the weight of whose opinions it has confidence.

We think the Supreme Court of Montana was right in holding that no error was committed in permitting the testimony of these witnesses. These are all the questions submitted to that court; and its ruling in respect thereto being correct, its judgment is

*Affirmed.*