ESSEX MOTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25709. Promulgated March 18, 1931.

*J. Marvin Haynes, Esq.,* and *C. J. McGuire, Esq.,* for the petitioner.

*Arthur H. Fast, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: Petitioner asks redetermination of deficiencies of $122,319.41 and $25,906.22 for the fiscal years ended November 30, 1919, and November 30, 1920, respectively.

Various errors are alleged, one of which was permanently waived by petitioner at the hearing, and two, centering on special assessment, were, by agreement, postponed for hearing should such hearing be necessary after disposition of the principal issues, i. e., the actual cash value of certain assets paid in for stock and the probable useful life of such property, both for the purpose of depreciation.

Petitioner is a corporation organized under the laws of Michigan on September 21, 1917. It is engaged in manufacturing and selling automobiles, parts, and accessories. The capital stock of the corporation is $500,000, divided into 50,000 shares of common. Twenty-five thousand shares (par $250,000) were issued for cash and the remaining 25,000 shares were issued for property consisting of the design and working model of a five-passenger motor car (the Essex), together with all patterns, tools, dies, jigs, and blue prints and all other property, rights and assets incidental or pertaining thereto.

The questions presented for determination are purely matters of fact. On study of the evidence we find a situation much the same as confronted us in *Anita M. Baldwin,* 10 B. T. A. 1198, from which we quote:

Petitioner introduced as an expert witness a man of long experience, evident ability, high local repute and thorough familiarity with the property. His qualifications were not questioned nor was the merit of his opinion weakened by cross-examination. In the opinion of this witness the fair market value of the Los Angeles County properties was $253,772 on March 1, 1913. On this opinion petitioner rests her case. As observed by Justice Brewer in the above cited case (*Montana Ry. Co.* v. *Warren*, 137 U. S. 348):

> It is fully open to the adverse party, if not satisfied with the values given, to call witnesses in the extent of whose knowledge and weight of whose opinion it has confidence.

This respondent did not choose to do. We are thus confronted with a record in which not merely the preponderance but all of the evidence of value supports petitioner's contention.

It would seem to be a reasonable proposition that if the evidence adduced by one party in support of a proposed valuation is clear, convincing and uncontradicted and no reason for disbelieving or discounting such evidence is present, and if the adverse party neither weakens the testimony by cross-examination nor produces any evidence on his own behalf, the party producing the evidence should prevail.

In the instant case we have the uncontradicted testimony of two expert witnesses, both eminently qualified to give opinions and both of whom had personal acquaintance with the design and model at the time in question, to the effect that the actual cash value of the property was, when acquired, not less than $400,000, and that if it had been offered for sale a buyer could have been found at that figure. Their testimony is well buttressed by experience and plausible reasons for their opinions. There is no word to the contrary either by direct or cross-examination and no question is raised as to the character of the property. The only argument advanced in opposition was the fact that the property was sold to the corporation for stock of a par value of $250,000. But this fact alone proves little. At most, it creates nothing more than a presumption of value which quickly melts before the positive testimony of qualified witnesses. In many cases we have not hesitated to fix a lower figure than the par of stock issued as the actual cash value thereof. Similarly, we are in no way limited if the evidence indicates an actual cash value in excess thereof.

We find the actual cash vale of the property paid in for stock to have been $400,000 on the date of payment. The subsequent experience of the company in manufacturing and selling cars built after the model in question fully corroborated the opinions of the value thereof.

The record presents a similar appearance as to the useful life of the property. We have the positive direct testimony of qualified witnesses that the useful life of the property involved, the same property above discussed, was, when acquired, not to exceed three years. This testimony was not weakened by cross-examination or met by direct testimony of other witnesses. It stands unattacked.

No contention was advanced as to the right to depreciation of the property in question. In such a situation the Board, not being furnished with other or better evidence and not of its own knowledge possessing such, may not disregard, were it so minded, the evidence of record. The petitioner must prevail. The probable useful life of the depreciable property, when acquired, was three years. The actual cash value of the property represents the cost of such property to petitioner. Hence, the allowance for depreciation, exhaustion and obsolescence, will be based on a cost of $400,000 and a useful life of three years.

The decision we have reached probably makes unnecessary a further hearing in the case.

*Decision will be entered under Rule 50.*