454

**UNITED STATES ex rel. and to Use of TENNESSEE VALLEY AUTHORITY v. PHILLIPS et al.**

Nos. 286, 290, 291, 301.

District Court, N. D. Georgia,
Gainesville Division.

June 22, 1943.

II. James Hitching, of Chattanooga, Tenn., and L. B. Bolt, Jr., of Knoxville, Tenn., for the United States.

Clint W. Hager, of Atlanta, Ga., and John M. Johnson, of Gainesville, Ga., for Charles V. Phillips et al.

Boyd Sloan, of Gainesville, Ga., and O. L. Foster, of Hiawassee, Ga., for Joseph S. Kimsey.

Before UNDERWOOD, RUSSELL, and LOVETT, District Judges.

PER CURIAM.

These four proceedings for condemnation of lands, brought under the Tennessee Valley Authority Act, 48 Stat. 58, 16 U.S.C.A. § 831 et seq., are here on exceptions to the awards of Commissioners. The controlling question for determination is the value of the several parcels of land taken.

Commissioners were appointed pursuant to § 25 of the Act, 48 Stat. 70, 16 U.S.C.A. § 831x, who conducted hearings, heard testimony, viewed the premises and made their awards. Dissatisfied with their findings of value, the United States has filed exceptions, claiming, first, the compensation allowed in each case is excessive, and, secondly, that the Commissioners received evidence on the hearings that was inadmissible, and their findings were vitiated because influenced by that evidence. In this court, as before the Commissioners, motions to strike or exclude the evidence charged to have been illegally received are made.

As the statute requires this court to pass de novo upon the proceedings and to fix the value of the property sought to be condemned regardless of the award previously made by the Commissioners (16 U.S.C.A. § 831x), we may put to one side the urge that the findings of the Commissioners were tainted by consideration of inadmissible testimony. We can not blind ourselves, however, to the fact that the Commissioners lived near the community where the lands are located, and none of the members of this court do, and that they had the benefit of personal inspections of the land taken, and we have not as the lands are now entirely or partially inundated by the waters that flooded that area upon the construction of a dam by the Authority. Cf. United States ex rel. for the Use of T. V. A. v. Powelson, U.S.,

63 S.Ct. 1047, 87 L.Ed. ——, decided May 17, 1943.

The cases are here on the records as made before the Commissioners. Orders were taken some weeks ago affording the parties, under named conditions, an opportunity to supplement the evidence heard by the Commissioners, but apparently all parties are satisfied that the facts were sufficiently developed, and no one asks for additional evidence to be heard.

We deal with the motion to exclude evidence first. The United States seeks to expunge from the record practically all of the oral testimony given by the witnesses for the land-owners, saying as reasons that the opinions of these witnesses touching the market value of the lands taken were shown to have been formed in one or more of several different inadmissible ways, i.e., capitalization of income, what is called the retail or summation method, comparisons of sales of dissimilar property, or prices paid by the T. V. A. for other lands. It is also argued that some of the witnesses included consequential damages not allowable, original cost of property taken, special value to the owner or the T. V. A., alleged offers, etc., in making up their estimates of market value, and that these facts rendered their testimony valueless. If these motions are sustained we are left only with the valuations placed on the lands by the government's witnesses.

The lands taken in condemnation are located in northeast Georgia, near the North Carolina line, in the Blue Ridge mountains. They consist chiefly of farm homesteads, occupied and cultivated by the owners. Homesites have been improved, the usual buildings erected, and in some of the cases the owners over a period of years have increased the yield of crops by intelligent planting, drainage, conservation and improvement of soils. Lands are infrequently sold in the community. Usually the homesteads pass from father to child by inheritance or will, and members of the same family for succeeding generations occupy and cultivate them. The most valuable lands are usually found in the valleys and are called bottom lands. They are very fertile. The next best grade is "second-bottoms" or "bench-lands". The higher one goes up the mountain side generally the less valuable the land becomes, especially if there is no timber or improvements of value located there. Here the lower and most valuable lands, where the whole homestead is not taken, are those which the power development inundates and which are therefore condemned.

The witnesses for the land-owners are chiefly neighbors living in the community, many of whom are also engaged in farming, owning lands somewhat similar if not identical, and familiar with the lands in controversy. Upon direct examination these witnesses after stating substantially the foregoing facts and asserting they were familiar with market values of land and after having explained to them what was meant by market value, gave in dollars and cents their opinions as to the values. Thereafter, upon cross examination, they were examined at length, and somewhat artfully, as to their opinions of the values of the constituent elements going to make up the whole farm unit, i.e., the value per acre of the different grades of land, value of improvements, orchards, timber, etc., and in some cases as to the productivity and income from annual crops as well as sales of other lands, and then summing it all up counsel would ask if the sum of the several values was the way the witnesses arrived at their valuations. Many answered yes; some qualified their answers. Upon re-direct examination, again being interrogated by skilled counsel, they would re-iterate their opinions of market value, i.e., what a willing buyer and willing seller would agree upon as value in fair negotiation, both fully informed as to all the elements making up value, neither acting under compulsion; and they would add that while the several factors about which government's counsel had inquired were given due consideration by them, they were not controlling, and they would also say they gave due effect to their general knowledge of values in that section of the state. Under these circumstances we regard the objections to the testimony as more properly going to its weight or effect than to its admissibility, its credit, not its competency.

 Giving due recognition to the rules invoked, viz., that a landowner may not prove separately the values of various uses to which the land is adapted, and then add the separate items of value to obtain the compensation for the whole (Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884, 887, 888; United States v. Meyer, 7 Cir., 113 F.2d 387, 397; United States v. Wise, 4 Cir., 131 F.2d 851, 852), that uncertain, speculative, anticipated

profits may not be capitalized to establish value (Welch v. Tennessee Valley Authority, 108 F.2d 95, 96 (14, 15, 16), 100, 101, certiorari denied Welch v. United States ex rel. for Use of Tennessee Valley Authority, 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed 1030; United States ex rel. for Use of Tennessee Valley Authority v. Davis et al., D.C., 41 F.Supp. 595(1), 596, but as to capitalization of rental value, see United States v. Waterhouse, 9 Cir., 132 F.2d 699, 701), that prices paid by the government in the condemnation of similar property is not properly to be considered in cases of this kind (United States ex rel. for Use of Tennessee Valley Authority v. Reynolds, 5 Cir., 115 F.2d 294; United States ex. rel. for Use of Tennessee Valley Authority v. Bailey, 115 F.2d 433), that increment or enhancement in value of lands probably within the scope of the project, due to the public improvement, is to be excluded (United States v. Miller, 317 U.S. 369, 376, 377, 63 S.Ct. 276, 87 L.Ed. ——), and that the question is "What has the owner lost, not what the taker gained" (Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 54 L.Ed. 725; United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 55, 76, 33 S.Ct. 667, 57 L.Ed. 1063), we nevertheless think the evidence complained of may be considered and given the effect—and only the effect—which this court thinks it is entitled to. It can not be questioned that just compensation includes all elements of value that are present in the property at the time it is taken, but may not exceed market value fairly determined. Its capabilities may always be shown as an aid to arriving at market value. Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236; Wise case, supra, 131 F.2d at page 852. And the general rule of law is that value may be proved by the opinion of any witness who possesses sufficient knowledge on the subject. It is difficult to lay down any exact rule in respect to the amount of knowledge a witness must possess; the determination must be left largely to the discretion of the trial Commissioners or the court. Montana R. Co. v. Warren, 137 U.S. 348, 353, 11 S.Ct. 96, 34 L.Ed. 681; Central Ga. Power Co. v. Cornwell, 139 Ga. 1, 3–5, 76 S.E. 387, Ann.Cas. 1914A, 880; 2 Lewis Eminent Domain, Sec. 654; 2 Nichols Eminent Domain, Sec. 1175; Ga. Code, §§ 38-1708, 1709.

Our conclusion is that the witnesses for the land-owners in the main were competent to give their opinions as to the market value of the lands, and the motions to strike all of their testimony as to values should be denied.

We come next to the values of the several parcels. There is no one witness in any of these cases whose opinion of market value is entirely satisfactory and which we are willing to follow servilely as a dependable guide. Therefore, we must weigh all of the testimony, disregarding that which has no probative force (and some has none), conscious in doing so that the most we can do it to make a fair approximation, exact, mathematical certainty not being possible. Miller case, supra, 317 U.S. at page 375, 63 S.Ct. at page 280, 87 L.Ed ——; Reynolds case, supra, 115 F.2d at page 296.

In case No. 286, the land is owned by Charles V. Phillips. The entire farm consists of 68.2 acres. Only 20.7 acres were taken and that for a flowage easement, but all of the buildings and the water supply were located there. The opinions of the land-owner's witnesses as to the difference between the value of the whole farm and the lands remaining after the taking varied from $5,667 to $12,500. The witnesses for the government also gave varying opinions,—from $2,700 to $3,300. We fix the value at $5,800.

Comodore A. Hilton owns the lands in case No. 290. The farm unit contained 139 acres. Perhaps one half was devoted to the growing of crops, and the principal portion of that was taken in fee simple, 67.4 acres. A flowage easement was taken over 9.2 acres, cleared, open land. The remainder not taken was 62.4 acres. The main buildings on the farm were on the property not taken, though one or more were on the land condemned and were demolished. Many of the witnesses for the land-owner failed to give any opinion as to values before and after taking, contenting themselves with stating what they considered the whole farm unit worth before any of it was taken. Their evidence, therefore, is of little or no help to us in trying to determine value. Others, also of little help, gave opinions of value of that taken only, giving no views of value as a whole before taking and value of that left after taking. The witnesses who did give

458

opinions which we may consider varied in their estimates from $10,500 to $19,000 in round figures. On the other hand, the government's witnesses varied in their opinions from $3,000 to $4,300. The Commissioners who saw the witnesses differed among themselves as to the value. We fix the value at $6,500.

■ There are 81.4 acres in case No. 291, of which 67.6 acres were cleared, and the whole farm unit was taken. The owners were Edwin Alfus Johnson and members of his family. He and his two brothers cultivated the lands, and from it supported themselves and their families and two sisters. The usual improvements, dwelling, barn and outhouses, were on the lands. The range of the testimony for the land-owners was from $7,000 to $9,000 valuations; for the government from $2,300 (without the buildings) to $3,800 (including the buildings). We fix the value at $5,400.

■ The Joseph S. Kimsey farm, case No. 301, contained 101.2 acres with the usual improvements, perhaps somewhat better than in the other cases, and the lands were probably in a higher state of cultivation. The government and the land-owner are practically in agreement as to the value of the improvements, approximately $2,000. There was some timber commercially valuable, removed by the T. V. A. after the taking. Witnesses for the government thought there were about 35 acres of "croplands" in the farm, including 4 or 5 acres only of bottom lands; approximately 18 acres of pasture land; and 40 acres of uncleared or "stumpland" on which there was some timber. Some farm records were kept showing the income from crops produced but we deem it unnecessary to review the figures as the books made no allowance for owner's labor, produce consumed at home, etc. Again there is great disparity among the witnesses as to the market value of the lands. For the land-owner's witnesses the range was from $10,000 to $16,000. The lowest valuation by a government witness was $4,200; the highest $5,970, though the latter is . of doubtful admissibility. We fix the value at $8,500.

■ Tax assessments of the several properties for the year in which these proceedings were begun were offered in evidence and objected to by the land-owners. We have given due consideration to them,

though we consider tax returns unsatisfactory evidence of value. See Savannah Sugar Ref. Corp. v. Atlantic Towing Co., 5 Cir., 15 F.2d 648(1), 650; Atlantic Towing Co. v. The Caliche, D.C., 47 F.Supp. 610(1), 613.

Let separate judgments for the respective land-owners in accordance with these findings be prepared and presented by condemnor's counsel on notice.