**UNITED STATES of America,
Appellee,**

v.

**Ernest TIPPETT, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Charles Ellis WILLIS, Appellant.**

**Nos. 9739, 9740.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1965.

Decided Nov. 22, 1965.

Certiorari Denied Feb. 21, 1966.
See 86 S.Ct. 889.

Sol E. Abrams, Greenville, S. C. (Abrams, Bowen & Townes, Greenville, S. C., on brief), for appellants.

Ernest J. Howard, Asst. U. S. Atty. (John C. Williams, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

The defendants appeal from a judgment based upon a jury verdict finding them guilty of receiving stolen goods of a value in excess of $5,000.00 which moved as interstate commerce in violation of 18 U.S.C.A. § 2315. The Government offered evidence to show that the defendant Tippett, who operated a service station, indicated to the witness Greer that he desired Greer to secure some tires for him. Shortly thereafter Greer and accomplices stole between 260 and 265 tires from the place of business of the American Oil Company in Gainesville, Georgia. Greer arrived with the stolen tires in a rented truck at his apartment in Greenville, South Carolina, at around 2:30 on a Sunday afternoon. Within half an hour he had informed Tippett that he had the stolen tires and where he had stolen them. That night Greer and Tippett agreed on a price and the tires were moved to Tippett's service station. The following night Greer, with Tippett and Willis, under cover of darkness moved the tires to a storage place in the nearby town of Greer, South Carolina. On this trip Greer told Willis where he had stolen the tires. Tippett paid Greer $800.00 in Willis' presence that night and a few days later Willis, a used car dealer, paid him the balance of $650.00 of the

agreed price at Willis' place of business. The owner of the tires testified that the tires were valued at $9,113.46 retail, $6,135.70 wholesale, and that they had cost him as a jobber $5,581.50, and that this latter figure represented the fair market value of the tires. Of the four questions raised on this appeal only one merits serious discussion, and that is whether the trial court committed error in declining to allow a defense witness to testify to the fair market value of the tires in South Carolina as distinguished from their value at Gainesville, Georgia, where they were stolen.

■ It is clear from the record that at the trial both sides operated on the theory that the issue of value of the stolen property was to be determined by the market value of the property at the time and place of the theft. The defendants, however, sought to offer evidence of the value of the property in the South Carolina market on the theory that the value varied so little anywhere in the United States that the South Carolina value would be relevant on the question of value in Georgia. However, their expert testified that he was not familiar with the Georgia market and could not say of his own knowledge whether it was at or near the same figure as the South Carolina market. Under these circumstances we cannot say that the court was in error in excluding the testimony. Montana Railway Co. v. Warren, 137 U.S. 348, 353, 11 S.Ct. 96, 34 L.Ed. 681 (1890); Hunt v. Bradshaw, 251 F.2d 103, 107 (4 Cir. 1958); Steingut v. Guaranty Trust Co. of New York, 58 F. Supp. 623, 640 (S.D.N.Y.1944).

Counsel was not able to point out to us and we have not found any cases dealing with the value problem in 18 U.S.C.A. § 2315 (Sale or receipt of stolen goods, etc.) as distinguished from 18 U.S.C.A. § 2314 (Transportation of stolen goods, etc.). In those cases which deal with § 2314, the authorities seem agreed that the property must be evaluated at the time and place where it was stolen. Herman v. United States, 289 F.2d 362, 366 (5 Cir. 1961); Husten v. United States, 95 F.2d 168, 171 (8 Cir. 1938), and cases therein cited.

■ We can think of no reason why the receiver should not be held liable on the same basis since he receives the property knowing it to have been stolen even though he may not know exactly when or where. This rule would also serve the practical purpose of not setting up two different standards which might complicate joint trials involving thieves, transporters, receivers and sellers of such property in elaborate interstate transactions. A rule requiring a different basis for evaluation under § 2315 might also result in splitting the jurisdiction in some circumstances between state and federal courts, a result to be avoided. Though the act of transporting may change the actual value of the goods, we have no difficulty in denying the receiver the benefit or detriment (depending upon how one looks at it) of the work product of the transporter.

■ The more difficult problem is the determination of the value to be attached to the property at the time and place of its theft. Title 18 U.S.C.A. § 2311, the section on definitions in the National Stolen Property Act, defines value as follows:

"'Value' means the face, par, or market value, whichever is the greatest, and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value threreof."

This court has had no occasion to define market value in those cases involving larger quantities of merchandise than would be involved in a retail transaction. In Herman the thief stole 900 rings in a jewelry manufacturer's sample case. The defense insisted that the value should be the cost of production. The court held that value should be the cost of production plus a reasonable markup. In discussing a reasonable markup the court said: "General retail value would naturally include a reasonable mark-up,

and evidence as to retail value of the goods is properly admissible." In Gordon v. United States, 164 F.2d 855 (6 Cir. 1947), a quantity of watches was stolen from a manufacturer's salesman. Evidence was offered that the company filed a claim against its insurer for $6,190.50 which was settled for $4,600.00, the inventory value. A qualified expert testified that value of the watches to the ultimate consumer was approximately $15,000.00. The court held that it was proper to offer in evidence the retail value. In Husten v. United States, supra, involving the theft of a large number of rings from a manufacturer's salesman, the majority held that the determinative value was the retail value or cost to the ultimate consumer. The court reasoned that the purpose of the statute was not to directly or indirectly reimburse the owner but was intended solely to punish the thief. Apparently for this reason the court concluded that it was consonant with the spirit of the statute to affix the highest possible value to the property stolen. With this reasoning we cannot agree since we take it that the Congress intended by placing a jurisdictional amount in the statute to limit the federal courts to transactions involving substantial amounts of property[1] and we think it compatible with the intent of Congress to give to the term "market value" its normal meaning in a commercial transaction where, as here, the goods which were stolen were held for sale by the lawful owner in the ordinary course of business.[2] Here the lawful owner testified that the tires involved cost him $5,581.50 and that the wholesale value was $6,135.70. We would take this latter figure to be the going price for 260 tires of this make and quality and therefore the market value at the time and place of the theft. We think this rule neither grasps for federal jurisdiction nor misconstrues Congress' intent in placing a jurisdictional minimum on the federal offense. It offers the further advantage of being reasonably susceptible to proof in the average case.

Affirmed.

---

1. The bill as originally passed by the Senate provided for a jurisdictional amount of $1,000. 78 Cong.Rec. 6981 (April 20, 1934). The House, however, amended the bill raising the amount to $5,000. 78 Cong.Rec. 6981 (May 5, 1934).

2. In United States v. Palumbo, 317 F.2d 607 (2 Cir. 1963), in a case involving goods stolen from interstate commerce, the court upheld a conviction where the only evidence offered was the invoice price.