**UNITED STATES of America, Plaintiff,**

v.

**3,727.91 ACRES OF LAND IN PIKE COUNTY, STATE OF MISSOURI and the Elsberry Drainage District, Defendants.**

**No. N71 C 40.**

United States District Court,
E. D. Missouri, N. D.

June 25, 1976.

---

Daniel Bartlett, Jr., U. S. Atty., Edwin Brzezinski, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Arthur L. Poger, Clayton, Mo., W. Munro Roberts, Jr., St. Louis, Mo., McIlroy & Millan, Bowling Green, Mo., Edward A. Glenn, Louisiana, Mo., Rendlen & Rendlen, Hannibal, Mo., for defendants.

## MEMORANDUM

NANGLE, District Judge.

This matter is before the Court following a trial held on April 12, 1976 to determine the amount of compensation due and owing to the Elsberry Drainage District following the taking of a portion of its lands on September 27, 1971.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. The Elsberry Drainage District (hereinafter "District"), organized to reclaim and to protect real property from flooding, was incorporated by the Circuit Court of Lincoln County, Missouri on January 3, 1911 under the authority of Chapter 41, Article 1, Revised Statutes of Missouri 1909.

2. The government took the land involved herein on September 27, 1971, along with additional parcels, in order to develop a waterfowl refuge area.

3. On August 1, 1975, this Court ruled that the Elsberry Drainage District was the owner in fee simple of approximately 214 acres of levees and ditches. This ruling was the result of an assertion of interest by the District in portions of land sold to the government by various landowners.

4. The levees, which were the sole focus of the valuation testimony presented at the trial, are roughly seven miles long, ten feet high and seventy feet wide. They were constructed in 1917 and 1918 and therefore were 53 to 54 years old on the date of taking.

5. Credible testimony establishes that the levees and ditches were in very poor condition. The ditches had standing timber

in them. The levees had brush and timber growing on them and were riddled with ground hog burrows.

6. It was the opinion of Thomas Fallrath, Senior Staff Realty Officer for the government, which the Court finds to be credible, that the levees had a useful life of 50 years. The Court notes that Warren Magruder, an earth moving contractor, testified that levees have a useful life of approximately 100 years. Mr. Magruder, however, had not inspected the particular levees in question, as had Mr. Fallrath. Furthermore, the Court is of the opinion that Mr. Fallrath's background and experience entitle his testimony to more credence than that of Mr. Magruder on the question of the levees' useful life.

7. The District was of the opinion that there were no comparable sales on which to base an opinion as to market value. Accordingly, the District presented evidence as to the reproduction cost of the levees. The estimate given, which stands uncontradicted, is $273,750.40. The District, asserting that the levees had a useful life of 100 years, claims that the value of the property, based on the formula of reproduction cost new less depreciation, would be $125,925.18.

8. Alternatively, the District looked to the sales between the government and the various landowners, which, prior to the August 1, 1975 order of this Court, were thought to incorporate the lands involved herein. The District divided the total amount of acreage in each sale into the total purchase price to arrive at a price per acre, and then multiplied that price by the amount of acreage in each sale which was, in fact owned by the District. After making adjustments for increased land values, the District produced a valuation of $104,378.16. The Court finds that this formula is entirely too speculative to have any bearing on valuation herein. The lands involved in the sales included timberlands, and lands well-suited for farming. By contrast, the lands involved herein consist of ditches and levees of an irregular shape. Accordingly, the Court concludes that the prices paid by the government for the total acreage can not be deemed to relate to the District properties. The evidence presented established that separate valuations for the land and for the levees was not done by the government at the time of these sales by the landowners and accordingly, the Court can not determine with sufficient certainty the amount of the acreage price attributable to the farm and timberlands and the amount attributable to the levees. Clearly, the nature of the respective properties indicate that the lands are not comparable.

9. David F. Galloway, President of the Board of Supervisors of the District, valued the land at $525.00 per acre. The Court finds that Mr. Galloway's valuation testimony is entitled to no credence herein as the sales upon which such valuation was based were clearly not comparable sales.

10. The government produced the testimony of Harry G. Herring, a real estate appraiser. It was his opinion, after inspecting the property, checking legal records, the neighborhood, and similar sales, that the property had no more than a nominal value.

11. M. T. Chandler, another real estate appraiser, testified that the levees could be used for cattle grazing if fencing were installed. He stated that such fencing would be exceedingly expensive. It was his opinion that the fair market value of the lands involved herein would be $11,770.00. He based this valuation on his experience as an appraiser and on the basis of comparable sales. After reviewing a number of sales and determining that most were not comparable due to the nature of the lands involved, he determined that a sale of property to the Missouri Conservation Commission on April 29, 1971 was comparable.

12. Mr. Fallrath also gave his opinion as to the value of the land involved. After examining the property, talking with people in the area, examining the records in the county, examining sales in the area and using his experience and knowledge as a real estate appraiser, Mr. Fallrath concluded that the fair market value of the lands would be $10,700.00. Mr. Fallrath stated that the sale to the Missouri Conservation Commission was the only comparable sale.

13. Testimony presented by the District established that the sale to the Missouri Conservation Commission was made by the sellers, the Riverland District landowners, only in an effort to rid themselves of marginally viable business. The price requested and received $11,000.00, was reached by determining the total financial obligations of the Riverland District, $10,800.00. The sale price was not reached as a result of negotiations between the buyer and seller as to the value of the lands but simply was determined by totalling the indebtedness of the Riverland District.

14. No evidence was presented indicating that the District would have to provide substitute levees and ditches.

## CONCLUSIONS OF LAW

The Court has jurisdiction over the subject matter and the parties to this suit in accordance with 28 U.S.C. § 1358.

■ It is well established that the burden of proving the value of the condemned lands rests upon the condemnee. *United States ex rel. Tennessee Valley Authority v. Powelson*, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); *Welch v. Tennessee Valley Authority*, 108 F.2d 95 (6th Cir. 1939), cert. denied, 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030 (1940); 5 Nichols on Eminent Domain § 18.5 (3d ed. rev. 1975). It is equally clear that the standard upon which compensation is based is "market value", "what 'it fairly may be believed that a purchaser in fair market conditions would have given'". *United States v. Miller*, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943). This standard is utilized even when comparable sales are lacking. The use of other formulas, such as reproduction cost less depreciation, are only a means of arriving at a "market value" for the property, in the absence of other evidence as to such a value. See *United States v. Toronto, Hamilton & Buffalo Navigation Co.*, 338 U.S. 396, 70 S.Ct. 217, 94 L.Ed. 195 (1949); *Kinter v. United States*, 156 F.2d 5 (3d Cir. 1946).

The government argues that the District is entitled to only nominal damages, asserting that there is no necessity to provide substitute levees and ditches. This argument is based on the universal holdings, in the context of the condemnation of streets, that "[w]hen no substitute facilities are necessary . . . no compensation is allowed". *United States v. City of New York*, 168 F.2d 387, 389 (2d Cir. 1948). See also, *United States v. Streets, Alleys and Public Ways in the Village of Stoutsville, Missouri*, 531 F.2d 882 (8th Cir. 1976); *Woodville, Okl. v. United States*, 152 F.2d 735 (10th Cir. 1946), cert. denied, 328 U.S. 842, 66 S.Ct. 1021, 90 L.Ed. 1617 (1946). The reason behind such holdings is:

If the municipality has not had to provide substitutes, then it has suffered no financial loss and hence is not entitled to substantial damages. Indeed, the taking relieves it of the burden of maintaining such roads. It is in the business not of making profits, but of supplying public needs; and neither original cost nor reproduction cost of a street affords any real measure of the City's burden in taking care of these needs when a relocation of facilities becomes necessary. *United States v. City of New York, supra* at 389–90.

■ Here, too, the District was not engaged in making profits but in serving a public function. See §§ 245.010–246.270, R.S.Mo. (1969); cf., *United States v. Priest Rapids Irrigation District*, 175 F.2d 524 (9th Cir. 1949). The District has not shown that substitute levees and ditches will be required in order that the District might fulfill its function of protecting the lands remaining within the District. Cf., *United States v. Des Moines County, Iowa*, 148 F.2d 448 (8th Cir. 1945), cert. denied, 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444 (1945) (holding that the focus is not whether there is an express or implied duty to provide substitutes but whether substitute facilities are necessary in fact). As in the context of street condemnation, the District has been relieved of its burden of maintaining the levees and ditches. The Court is unable to distinguish this condemnation from the condemnation of streets and accordingly, ab-

sent a showing of the need for substitute facilities, only nominal damages may be awarded.

Assuming *arguendo,* however, that this theory of compensation is not applicable herein, *cf., State of California v. United States,* 395 F.2d 261 (9th Cir. 1968), the Court nonetheless concludes that only nominal damages may be recovered.

■ The valuation testimony presented by the government's experts is entitled to little credence. These valuations rested upon the sale of lands to the Missouri Conservation Commission, in addition to each expert's background and experience. The evidence showed, however, that the sale was a forced sale, that is, not a sale between a willing buyer and a willing seller:

> At the least, the "willing buyer-willing seller" phraseology is designed to exclude consideration of forced-sale prices (by an "unwilling" seller); but it may also be designed to exclude many other forms of sales, real or imaginary, which may be deemed abnormal . . . 1 Orgel on Valuation Under Eminent Domain § 20 (2d ed. 1953).

Accordingly, the sale itself would be inadmissible to show comparable market price. See 1 *Orgel, supra* at § 133; 4 *Nichols, supra* at § 12.3113, *et seq.*

While the experts' testimony will not be excluded because of the inclusion of this sale in their valuation, *United States v. Delano Park Homes, Inc.,* 146 F.2d 473 (2d Cir. 1944) the Court concludes that the inclusion of the sale adversely affects the weight to be given to their valuation testimony. Absent a reliance on comparable sales, there is little factual basis for their opinions. *Cf., Montana Railway Company v. Warren,* 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681 (1890); *United States v. Sowards,* 370 F.2d 87 (10th Cir. 1966); 1 *Orgel, supra* at § 133; 5 *Nichols, supra* at § 18.42. Accordingly, the Court concludes that their testimony is of minimal help in determining the amount of compensation to be awarded herein.

■ Where market value can not be established by use of comparable sales, reproduction cost less depreciation is used as a means of determining market value. *United States v. Certain Property Located in the Borough of Manhattan, City, County, and the State of New York,* 306 F.2d 439 (2d Cir. 1962); *United States v. Benning Housing Corporation,* 276 F.2d 248 (5th Cir. 1960); *United States v. Becktold Company,* 129 F.2d 473 (8th Cir. 1942). Because of the nature of the lands involved herein, and the absence of any comparable sales, the Court concludes that this formula is the only useful indicator of a market value for the lands.

■ The Court is aware of dicta indicating that use of the reproduction cost formula is inappropriate where there is no evidence that the property will be reproduced. See *United States v. Toronto, Hamilton & Buffalo Navigation Company, supra.* Nonetheless, if the theory of compensation uniformly applied to the condemnation of streets is not applicable herein, the Court would be compelled to determine the compensation due the District. The expert testimony presented by the government was without sufficient factual basis to support the valuations reached. The alternative formula presented by the District, based on sales by landowners to the government, is of too speculative a nature to be a reliable indicator of market value. Accordingly, the Court concludes that use of the reproduction cost formula would be the only means presented by which this Court could determine a market value and thus award compensation.

The uncontradicted evidence established a reproduction cost of $273,750.40. The Court found, however, that the levees had a useful life of only 50 years. Accordingly, on the date of taking, the levees were totally depreciated, being in excess of 50 years old on that date. It is the Court's conclusion, therefore, that the District would be entitled to recover only nominal damages herein.

Judgment will be entered for the District in the amount of $1.00.