ST. GENEVIEVE GAS COMPANY, INC., a corporation, Plaintiff-Appellant,

v.

TENNESSEE VALLEY AUTHORITY, et al., Defendants-Appellees.

UNITED STATES of America, et al., Plaintiffs-Appellees,

v.

OUTSTANDING MINERAL RIGHTS IN 2,892.6 ACRES OF LAND, etc., et al., Defendants,

St. Genevieve Gas Company, Inc., et al., Defendants-Appellants.

No. 83-7498.

United States Court of Appeals, Eleventh Circuit.

Dec. 5, 1984.

Robert S. Edington, Mobile, Ala., Gene M. Hamby, Jr., Sheffield, Ala., for St. Genevieve Gas Co. and U.S. Pipe.

M. Elizabeth Culbreth, James E. Fox, Asst. Gen. Counsel, Brent R. Marquand, Don O. Whitehead, Attys., T.V.A., Knoxville, Tenn., for appellees.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Brent R. Marquand, Don O. Whitehead, M. Elizabeth Culbreth, Attys., Tennessee Valley Authority, Knoxville, Tenn., for appellees U.S.A. ex rel T.V.A. and T.V.A.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

This appeal involves two cases consolidated by the district court, one an inverse condemnation suit by appellant St. Genevieve Gas Company ("St. Genevieve"), and the other a condemnation suit by appellee Tennessee Valley Authority ("TVA"). For the reasons discussed below, we affirm the district court's finding that the leases held by St. Genevieve had no commercial value.

However, we remand to the district court for an award of nominal damages, resulting from the TVA's undisputed taking of the St. Genevieve mineral leases.

## FACTS AND BACKGROUND

At some point prior to 1979, the TVA decided to construct the Cedar Creek Dam and Reservoir in the northern portion of Franklin County, Alabama. In constructing the dam, the TVA found it necessary to flood certain lands in which St. Genevieve had leasehold mineral rights. In early 1979, St. Genevieve, anticipating the imminent flooding of the land in question, filed suit in federal district court. It sought to enjoin TVA from "impounding"[1] the area where St. Genevieve held its mineral leases. The TVA flooded the area in question on the day following St. Genevieve's request for an injunction.

In its complaint, St. Genevieve also requested that the TVA buy its mineral rights or condemn its property. The district court denied St. Genevieve's motion for a temporary or permanent injunction, stating that injunctive relief was not proper; however, it held that St. Genevieve had stated a claim for just compensation. Approximately six months after the effective seizure of St. Genevieve's leases, TVA instituted a condemnation proceeding pursuant to §§ 4(h) and 25 of the TVA Act, 16 U.S.C.A. §§ 831c(h), 831x (West 1974).

After consolidating the two actions, the district court referred the cases to a three-person standing commission appointed by the district court to determine the issue of just compensation pursuant to Fed.R.Civ.P. 71A(h). The commission held an eight-day hearing in November of 1982. The hearing involved extensive testimony from many witnesses on both sides and the introduction of numerous exhibits. In addition, the commission viewed the subject properties.

---

**1.** The TVA refers to its flooding activities in northern Franklin County, Alabama, as "impoundment" of St. Genevieve's interests. In this regard, it is interesting to note that the TVA's conduct violated the spirit of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C.A. § 4651, *et seq.*, which calls for negotiation and conciliation

with the potential condemnee and, in any event, the institution of legal condemnation proceedings prior to a taking. This court realizes, however, that the act may not be mandatory upon the government because it does not create any rights in favor of plaintiffs or liabilities against the government. *See* 42 U.S.C.A. § 4602 (West 1983).

On March 21, 1983, the commission issued a unanimous 65-page report. The commission rejected St. Genevieve's contention that there was natural gas and limestone present in commercially exploitable amounts. Applying the relevant legal standard, *see Eagle Lake Improvement Co. v. United States*, 141 F.2d 562 (5th Cir.1944),[2] the commission held that there was neither a "reasonable probability" nor a "reasonable possibility" of commercial exploitation of natural gas or limestone. The commission thus found that just compensation for the taking of St. Genevieve's mineral leases was zero dollars.

■ In an opinion dated July 7, 1983, the district court adopted the commission's report without exception. It agreed with the commission's reading of *Eagle Lake, supra*, and deferred to the commission's findings of fact pursuant to Fed.R.Civ.P. 53(e)(2) ("The court shall accept the [commission's] findings of fact unless clearly erroneous").[3]

## DISCUSSION

The primary dispute in this case is factual.[4] We will only set aside the district court's findings of fact with regard to the value of St. Genevieve's leases if such findings are "clearly erroneous." Fed.R.Civ.P. 52(a).

St. Genevieve claims that the subsurface lands under lease to it contained commercially exploitable deposits of natural gas and limestone at the time of the taking. Thus, the leases have a market value which can be ascertained by reference to "comparable" sales of mineral leases in northern Alabama. TVA, on the other hand, urges that the commission's finding of no market value be affirmed. TVA relies on its expert witnesses who testified, based on their prior knowledge and subsurface testing of the subject lease properties, that limestone and natural gas do not exist in commercially exploitable amounts. TVA also points to prior exploration of the properties which produced no commercially significant finds of mineral deposits.

■ A review of the entire record reveals a dispute as to the potential for commercial production. Some of St. Genevieve's witnesses did testify that commercial exploitation was possible at the time of the taking. However, we do not sit to reevaluate the evidence and make new findings of fact.

A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire [evi-

2. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

3. The "clearly erroneous" standard of Fed.R. Civ.P. 53(e)(2) is applicable to condemnation proceedings. *See* Fed.R.Civ.P. 71A(h).

4. St. Genevieve claims that the commission and the district court misapplied the controlling precedent, *Eagle Lake Improvement Co. v. United States*, 141 F.2d 562 (5th Cir.1944). While we believe that *Eagle Lake* requires an award of nominal damages, *see* discussion in text *infra*, *Eagle Lake* was correctly applied with respect to whether St. Genevieve's leases had a commercial value at the time of the taking.

The commission and the district court asked the proper question: Was there "a reasonable probability ... that [limestone] or gas in paying quantities might be produced[?]" *Id.* at 564.

*Eagle Lake* also delineates a "reasonable possibility" standard, applying Texas law regarding the value of mineral leases. Assuming this standard can be applied with respect to Alabama leases, it is clear that the court below could properly conclude, on the basis of the extensive drilling of the property, that there was not even a "reasonable possibility of the existence of minerals in paying quantities in the subject properties ...." The commission so found.

Similarly, the case of *Montana Ry. Co. v. Warren*, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681 (1890), which St. Genevieve urges this court to consider, is inapplicable. In *Montana Ry.*, the land adjacent to the area in question had a rich mineral vein running through it. The Court upheld the Montana Supreme Court's reliance on opinions concerning the potential value of mineral deposits, even though the land "had not been developed so far ...." *Id.* at 352, 11 S.Ct. at 97. As indicated above, however, St. Genevieve's interests had been extensively developed with an eye towards commercial mineral exploitation.

**1414**

dence] is left with the definite and firm conviction that a mistake has been committed."

*Jackson v. Seaboard Coast Line Railroad Co.*, 678 F.2d 992, 1016 (11th Cir.1982), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

TVA presented numerous expert witnesses who were thoroughly apprised of the factual issues. They unanimously stated their belief that St. Genevieve's leases were worthless. The commission's view, therefore, that "the great weight of the testimony ... leads to a finding ... that there are no commercial quantities of natural gas in the properties described" is supported by the record.[5] In any event, we are certainly not left with "the definite and firm conviction that a mistake has been committed."

St. Genevieve argues that the proper measure of just compensation is the marketplace, and that its evidence of "comparable" sales for value went unrebutted in front of the commission. It is apparent, however, that the commission and the district court found these sales *not* to be comparable because the subject leases had been "drilled out," *i.e.,* thoroughly explored. *See supra* note 4. Testimony before the commission readily supports this finding and, thus, it is not "clearly erroneous."

 The commission specifically concluded that St. Genevieve was not entitled to nominal damages and the district court adopted this conclusion without comment. In this regard, the district court erred as a matter of law. The leases held by St. Genevieve gave it the legal right to exclude other, nongovernmental, individuals or entities from exercising rights it held under those leases. This right to exclude is not forfeited simply because the leases have no commercial value.

That this principle applies to condemnation proceedings is directly supported by

*Eagle Lake, supra.* After discussing the "reasonable probability" and "reasonable possibility" tests with regard to the valuation of mineral leases, the court stated that *"[i]n any event,* such leases have a *nominal value." Eagle Lake Improvement Co. v. United States,* 141 F.2d at 564 (emphasis added); *see also Mayor & City Council of Baltimore v. United States,* 147 F.2d 786, 789–91 (4th Cir.1945); 29A C.J.S. *Eminent Domain* § 157a & cases cited ("Where there is no evidence tending to show [substantial damages] ... only nominal damages should be assessed as where petitioner shows the defendant has only a bare legal title ..."; but there is a minority view to the contrary); *cf. United States v. 3,727.91 Acres of Land, More or Less, etc.,* 563 F.2d 357 (8th Cir.1977) (assuming propriety of nominal damages award, but finding substantial damages appropriate); *King v. United States,* 292 F.Supp. 767 (D.Colo.1968) (same).

At oral argument, St. Genevieve suggested that nominal damages be awarded at $1 per acre. We disagree. The legal entitlements taken by TVA were leases. Thus, St. Genevieve is entitled to nominal damages of $1 for each of its mineral leases existing at the time of the taking.

In light of the foregoing, the district court's decision that St. Genevieve's mineral leases had no commercial value is AFFIRMED. However, the case is REVERSED and REMANDED for an award of nominal damages to St. Genevieve and for other proceedings not inconsistent with this opinion.

---

5. The commission found that St. Genevieve presented no evidence at all with regard to the presence of limestone in "commercially produceable quantities." We agree and, thus, this finding was not "clearly erroneous."